WILLIAM BANKS *v.* STATE OF INDIANA.

[No. 969S214. Filed December 16, 1971. Rehearing denied February 21, 1972.]

*Robert J. Fink, Haymaker, Hirsch & Fink*, of Indianapolis, for appellant.

*Theodore L. Sendak*, Attorney General, *Robert A. Zaban*, Deputy Attorney General, for appellee.

PRENTICE, J.—Defendant (Appellant) was charged with Murder in the First Degree. His plea was "self defense." He was found guilty of manslaughter and sentenced to the Indiana State Prison for not less than two (2) nor more than twenty-one (21) years. The appeal to this Court challenges the sufficiency of the evidence.

The necessary elements of "self defense" have been most recently set forth by this Court in the case of *King* v. *State* (1968), 249 Ind. 699, 234 N. E. 2d 465. We quote from that case:

"Where one has taken the life of another human being, and thereafter contends that he did so in self-defense, he can only be successful in his contention if:

(1) he acted without fault,

(2) he was in a place where he had a right to be, and

(3) he was in real danger of death or great bodily harm, or in such apparent danger as caused him in good faith to fear death or great bodily harm.

*Bullard* v. *State* (1964), 245 Ind. 90, 195 N.E. 2d 856; *Hightire* v. *State* (1966), 247 Ind. 164, 213 N.E. 2d 707. The burden is upon the State to show that defendant does not meet one or more of these requirements. *Dorak* v. *State* (1915), 183 Ind. 622, 109 N.E. 771. Whether the State has borne its burden of showing that the homicidal act was not carried out in self-defense is a question of ultimate fact to be decided by the jury. *Robinson* v. *State* (1962), 243 Ind. 192, 184 N.E. 2d 16.

After the jury made this determination in favor of the State and against the defendant, this Court, on appeal:

' * * * has upon it a duty to consider, not to weigh, the evidence in the case for the purpose of determining whether there is any substantial evidence of probative value from which a jury reasonably could have inferred that the appellant was guilty of the offense charged' *Robinson* v. *State*, *supra*, 243 Ind. at 197. See also *Easton* v. *State* (1967), 248 Ind. 338, 228 N. E. 2d 6; *Baker* v. *State* (1956), 236 Ind. 55, 138 N. E. 2d 641." 249 Ind. at 705.

This Court has often held that a guilty verdict will not be disturbed upon a claim of insufficiency of the evidence unless there is a total lack of some evidence of an essential element of the crime; and where the issue of the sufficiency of the evidence is raised on appeal, this Court has repeatedly stated that it will consider only the evidence most favorable to the State with all reasonable inferences which may be drawn therefrom.

*Grimm* v. *State* (1970), 254 Ind. 150, 258 N. E. 2d 407.

Considering only the evidence most favorable to the State and all reasonable inferences to be drawn therefrom, we find the following circumstances. At approximately 1:00 a.m. on August 24, 1968, the defendant and the decedent met on the street while walking in opposite directions. The decedent was alone, and the defendant was in the company of Jack Wines. A fight ensued between Defendant and decedent, as a result of which decedent died of stab wounds inflicted by the defendant. A portion of the fight was witnessed by Brent Threlkeld from

a distance of approximately thirty feet, as well as by Jack Wines. Ralph Smith also witnessed a portion of the fight from a distance of one hundred to one hundred and fifty feet, but his testimony had no probative value and will not be here related. Both Threlkeld and Wines appeared as witnesses for the State.

Mr. Threlkeld testified that when he first saw the defendant and the decedent they were "squared off" facing each other and decedent hit Defendant with a stick (later identified as a board approximately three-quarters of an inch thick by three inches wide by three feet long). The blow struck Defendant about the left part of the shoulder or the left part of the head. A scuffle followed, during which the decedent was continuely hitting the defendant with the board. Ultimately, decedent fell backwards on the ground, the stick flew out of his hand, and he put his hand in the air and said something to the effect of "no, I give," or "I quit." Instantly thereafter, if not simultaneously, Defendant stabbed the decedent in the stomach. Decedent rolled over and Defendant stabbed him in the back. Defendant and his companion walked away. The entire melee lasted about two minutes. The defendant was just standing there when the decedent first struck him with the board. Thereafter Defendant was waving his hands around, but he could not tell whether the defendant was trying to get away, ward off blows or to hit the decedent.

Mr. Wines testified that he and the defendant had been drinking together that evening but that neither was drunk. They were walking to the hotel where they both lived and met the decedent walking in the opposite direction. As they passed each other, the decedent said something to the defendant. He did not know what was said, but Defendant turned and went back while the witness walked a few steps ahead, and the next thing he knew the defendant and the decedent were fighting. Decedent was swinging a "club" and Defendant had a knife. The witness got between the defendant and the decedent in an attempt to stop the fight. The defendant stopped

momentarily, but the decedent would not. Decedent told the witness to get out of the way or he would get hurt and swung at him with the board. The decedent was swinging the board with both hands and never stopped. The parties were in close together and both moving. The witness could not say how many times the defendant cut the decedent, and when the fight was over the defendant's head and eye were mangled and he was bleeding badly.

Testimony of Dr. Benz, pathologist and deputy coroner, testifying for the State, together with a photograph of the decedent introduced into evidence by the State, disclosed that the decedent was thirty-three years old, six feet one inches tall, weighed approximately 180 to 185 pounds and was of a muscular physique.

Uncontroverted defense evidence, none of which is inconsistent with any evidence offered by the State, reveals that the defendant was sixty-two years old and an ex-convict on parole, that he had a long police record and several convictions, none of which involved violence, that in the fight between him and the decedent he received a severe laceration of the cornea and and a mashed iris, both of the left eye, a fractured fifth metacarpal of the right hand and a perforated eardrum. His injuries required fifteen days of hospitalization and subsequent medical out-patient care and left him with 20/200 vision of the right eye and a permanently impaired hand.

Defendant's uncorroborated testimony was to the effect that when he and Mr. Wines met and passed the decedent, the decedent called to him and that he went back a few steps, whereupon the decedent demanded his money and that of Mr. Wines under threat of being shot. There was an unidentified man and woman in a car parked nearby, and in view of their presence Defendant told decedent that he was crazy and that he would not give him a nickel and turned and walked a few steps towards Mr. Wines. At this moment the decedent called to him again and he went back, whereupon decedent apologized for his previous conduct and told Defendant that he he did not

have a gun. But having thusly put the defendant off guard, the decedent struck the first blow with his fist and then commenced to beat him with a club. Mr. Wines came between them momentarily and tried to stop the fight but the decedent then attacked Mr. Banks. Defendant did not want to fight. Realizing that his parole was in jeopardy, he only wanted to get away; but decedent had overpowered him, and there was no way for him to escape. Following the fight, he returned to his hotel and threw the knife away.

> "Our case law in Indiana recognizes the right of every citizen to reasonably defend himself against unwarranted attack. Therefore self-defense in homicide and assault cases must reman a viable rule and when such defense is asserted and supported by the evidence it may not be casually thrust aside by the jury. Hence the burden was upon the State to negate the element of self-defense by substantial evidence of probative value." *Johnson* v. *State* (1971), 256 Ind. 579, 271 N. E. 2d 123, 124-25, and cases cited.

In cases involving an assault and battery, when elements of the offense charged are proved, there usually will be direct proof or probative inferences eliminating one or more of the elements of a successful self-defense plea. Although of a negative character, the burden of disproving the claim of self-defense is nevertheless upon the State. As long as there is a reasonable exercise of the right of self-defense, there is also a reasonable doubt as to the guilt of the accused. *Plummer* v. *State* (1893), 135 Ind. 308, 34 N. E. 968.

The State is entitled to resort to circumstantial evidence in proving the essential elements of the crime charged; however, in order for that circumstantial evidence to be adequate, all reasonable hypothesis of innocence must be excluded. *Hardesty* v. *State* (1968), 249 Ind. 518, 231 N. E. 2d 510; *Osbon* v. *State* (1938), 213 Ind. 413, 13 N. E. 2d 223; *Krauss* v. *State* (1947), 225 Ind. 195, 73 N. E. 2d 676.

The same rules must be applied when the plea is self-defense, and when the evidence is circumstantial, all reasonable hy-

pothesis of the validity of the plea must be excluded, if the defendant is to be convicted.

In the case under consideration, it is clear that the defendant was at a place where he had a right to be. Secondly, there is no evidence from which there could be a finding or a reasonable inference that the defendant provoked or instigated the fight or voluntarily took part in it. The most that can be said for the State in this respect is that, disregarding the testimony of the defendant, it cannot be determined from the evidence how or why the fight commenced. Lastly, the State's own evidence discloses that the defendant was himself in real danger of death or great bodily harm throughout the encounter, until a split second before its tragic end. There is no showing that any discernable interval of time elapsed between the time when the decedent, falling backward to the ground and dropping the club, said "I quit," and the time of delivery of the fatal stab or stabs. We might assume, as the jury apparently did, that the defendant was in no real danger at this time; but if this be true, he nevertheless by then had been transformed into a savage beast fighting for his own life. The law will not, under such circumstances, presume or infer that he had the ability at that instant to discern his altered position but will realize that although the real danger may have passed, he still, in good faith, believed himself to be in grave peril, and such belief was warranted under the circumstances.

"A man has a right to act upon appearances of actual and immediate danger, if he sincerely believes such apparent danger exists. The danger need not be actual. It need be only apparent to a reasonable person under the circumstances. The law protects persons who feel compelled to act at such times even though in retrospect it is proved that they have erred. *The law takes into consideration the surrounding circumstances under which the events took place.*" (Emphasis ours) *Heglin* v. *State* (1957), 236 Ind. 350, 353, 140 N. E. 2d 98.

When one charged with murder defends on the grounds that the killing was done in self-defense, the existence of danger

to the defendant, the necessity of defending himself, and the amount of force necessary to employ can only be determined from the standpoint of the defendant at the time and under the existing circumstances, as shown by the evidence. *McKee* v. *State* (1926), 198 Ind. 590, 154 N. E. 372.

> "When his life is in danger, or he is in danger of great bodily harm, or when, from the acts of the assailant, he believes, and has reasonable ground to believe, that he is in danger of losing his life or receiving great bodily harm from his adversary, the right to defend himself from such danger, or apprehended danger, may be exercised by him, and he may use it to any extent which is reasonably necessary. *He need not believe that he can only defend himself by taking the life to his assailant. If the death of his assailant results from the reasonable defense of himself, he is excusable, whether he intended that consequence or not, or whether he believed such result was necessary or not.*" (Emphasis ours) *Flick* v. *State* (1935), 207 Ind. 473, 475-76, 193 N. E. 603.

In a proper case the assaulted party has a right to meet force by force; and if, in a proper defense of himself a certain injury is inflicted, he may be excused without a belief on his part that it was necessary to inflict the particular injury which was inflicted. The particular injury inflicted is simply the result of the defense. *McDermott* v. *State* (1883), 89 Ind. 187.

Evidence of Defendant's flight from the scene of the altercation and his subsequent disposition of the weapon, was competent evidence of the consciousness of guilt. *Layton* v. *State* (1968), 251 Ind. 205, 240 N. E. 2d 489; *Walker* v. *State* (1968), 250 Ind. 649, 238 N. E. 2d 466; *Meredith* v. *State* (1966), 247 Ind. 233, 214 N. E. 2d 385. Also, it is a matter, generally, for the trier of the facts to determine what weight and value should be given to such evidence. *Reno* v. *State* (1967), 248 Ind. 334, 228 N. E. 2d 14; *State* v. *Torphy* (1940), 217 Ind. 383, 28 N. E. 2d 70.

Nevertheless, the flight of an accused is a circumstance to be considered against him only in connection with other evi-

dence, its probative effect, as evidence of guilt, depending upon the conditions and the motive which prompted it. 23 Corpus Juris Secundum 559, *Criminal Law* § 907. We have previously held that flight alone will not support a conviction and that this is particularly true when there is an explanation of a flight which is consistent with the hypothesis of innocence. *McAdams* v. *State* (1948), 226 Ind. 403, 81 N. E. 2d 671. Defendant's status as a parolee and his fear of having his parole revoked by reason of the flight may have motivated his flight and disposition of the weapon, and such would be consistent with the hypothesis of self-defense. However, we do not and cannot invade the province of the jury in this respect but, assuming such flight and disposition of the weapon to be evidence of a consciousness of guilt, there is, nevertheless, no other evidence or reasonable inference against the hypothesis of a valid self-defense and with which such evidence can be joined and considered.

We, therefore, reverse the judgment of the trial court; and there being nothing in the record to indicate that the evidential deficiency might be supplied upon a retrial, we direct that the defendant be discharged.

DeBruler, Givan and Hunter, JJ. concur. Arterburn, C.J. dissents.

NOTE.—Reported in 276 N. E. 2d 155.