ROY M. BAKER *v.* STATE OF INDIANA.

[No. 672S82. Filed July 16, 1973. Rehearing denied September 20, 1973.]

Max Cohen, Cohen & Thiros, of Gary, for appellant.

Theodore L. Sendak, Attorney General, Wesley T. Wilson, Deputy Attorney General, for appellee.

GIVAN, J.—Appellant was charged by indictment with first degree murder. The charge was originally filed in Daviess County. Upon application of the appellant, the venue was changed to the Greene Circuit Court. A jury trial resulted in a verdict of guilty of murder in the second degree and a finding that the appellant should be sentenced for an indeterminate period of not less than fifteen nor more than twenty-five years. Accordingly, the appellant was sentenced to the Indiana State Prison for said period.

The record reveals the following evidence in this case:

At about 9:55 P.M. on April 14, 1971, the radio operator for the Washington city police received a telephone call from the appellant stating that the appellant's wife had been hit on the head and was in the garage. Washington police officers responding to the call were taken to the garage by the appellant, who said, "Look what they've done to my wife." Mrs. Baker was lying on the floor of the garage with a piece of wire around her neck. Her purse, glasses and some change were near the body and blood was spattered about the floor.

The appellant told police officers that he and his wife had had supper together, and that after supper she had gone to church but that he had stayed home because he was tired, and

that he had fallen asleep while watching television. When he awoke, he noticed the garage door was shut. He thought this was odd in that it had been open when he had fallen asleep. Upon investigation, he discovered his wife's body and called police. He did state that he did not touch the body.

Police officers found appellant's jacket on the front seat of a pickup truck in the garage. The jacket had a spot of blood on it. Officers also found some gloves which appellant stated were his and a wet wash rag in the basement of the house.

Appellant's shoes were in the house and were also spotted with blood.

The officers found the decedent's empty billfold about 25 or 30 feet from the back door of the house. Appellant told officers that his wife had money, but not over $40 in her billfold.

Several witnesses testified that the appellant repeatedly said, "Why did they do it?" However, the witness, Othmar Frey, the brother of the decedent, stated that appellant said, "Why did I do it?"

Appellant had scratches on his face and on his wrist. He explained the scratches on his wrist by saying they were received when he and his wife had a friendly scuffle prior to her leaving for church, and that the scratches on his face were received when he ran into a door in his haste to get to the telephone after discovering his wife's body.

Everett Beasley, the Sheriff of Daviess County, testified that the defendant told him he got the scratches at work.

There was evidence that the appellant at previous times had made telephone calls from a pay telephone near his home to a Miss Jones for whom he had done some repair work.

Appellant told Washington Police Officer Jesse Tooley that he had a lady friend, but that he hadn't seen her for some time due to Lent.

The appellant had a $1 bill and a $20 bill in his wallet, which were stained with blood.

The wire which was wrapped around decedent's neck bore strands of fiber very similar to the fiber from which the gloves were made.

In the opinion of the pathologist the cause of death was strangulation.

At the trial six witnesses testified as to the good reputation of the defendant for peace and quietude.

All identifiable blood found on and near the scene was type O. Both the appellant and his wife had type O blood.

The appellant first claims the verdict of the jury is not sustained by sufficient evidence and is contrary to law. It is appellant's position that since all of the evidence against the appellant is circumstantial, "it must be of such conclusive and persuasive force that it tends to point surely and unerringly to the guilt of the accused to such an extent that it excludes every reasonable hypothesis of innocence." Citing *Manlove* v. *State* (1968), 250 Ind. 70, 232 N. E. 2d 874, 12 Ind. Dec. 494, and *Baker* v. *State* (1956), 236 Ind. 55, 138 N. E. 2d 641.

There is no question but what the law in Indiana is as stated by the appellant. We must, therefore, examine the evidence in this case to determine whether or not this case falls within that principle of law. Judge Emmert, speaking for this Court in the *Baker* case, very ably and completely discussed the principle of law involved and in so doing stated at page 62:

"When we carefully examine the cases decided in the long history of this court which have reversed convictions because they were not sustained by sufficient evidence, it is apparent that the court was applying a test that some material allegation had not been proved by substantial evidence so that no reasonable man could say this issue had been proved beyond a reasonable doubt."

When we analyze the case at bar, there is, of course, no doubt that the decedent was murdered by some one. We

then turn to the evidence to see whether or not a reasonable man could say that there was evidence that the appellant was the perpetrator of that crime.

First of all, the appellant had the opportunity beyond a doubt. However, we recognize, as is contended by the appellant, that mere opportunity to commit a crime is not enough to support a conviction. *Baker* v. *State, supra.*

In addition thereto, there was evidence from which the jury could reasonably find that the appellant had a motive for killing his wife, namely: the existence of a "lady friend." There is, of course, the possibility, as argued by the appellant, that some intruder entered appellant's garage and killed the decedent in the perpetration of a robbery. However, there is evidence from which the jury could reasonably conclude that such an occurrence was improbable for several reasons:

1. Gloves and a wet washcloth, which the jury could reasonably believe were involved in the commission of the crime, were found in a niche in the basement, a most unlikely hiding place for a third person bent on robbery.

2. The fact that a jacket belonging to the appellant was blood spattered and in appellant's truck.

3. The fact that appellant's shoes were blood spattered.

4. That appellant had money in his wallet which was also blood spattered.

5. The fact that appellant himself stated he made no effort upon discovering his wife to determine whether or not she was still alive, but left her body untouched and summoned police.

When this array of facts was presented by the State, the jury had before it proof of each of the material allegations of the indictment from which they could reasonably conclude that it was in fact the appellant who had killed the decedent. As stated in the *Baker* case, *supra,* at page 61:

" 'This court cannot weigh evidence, but must determine whether there is substantial evidence of probative value from which a jury could reasonably have inferred that appellant was guilty of the crime."

Appellant next claims the trial court erred in permitting a medical witness to testify as to a comparison of fibers found on the wire which was used to strangle the decedent and on the gloves of the appellant which were found hidden in the basement of his home.

The witness in question was Dr. Latimer Dunn, a pathologist and deputy corner, who performed the autopsy on the decedent. In the course of his testimony he was questioned concerning the nature of material found on the woven wire cable used to strangle the decedent and asked to compare fiber found on the cable with the gloves found in the basement.

It is true, as contended by the appellant, that the witness was qualified as a medical pathologist and nothing more. However, the record reveals that his testimony was not of a technical nature concerning questioned fibers. His qualification as a pathologist clearly revealed that he was an expert in the use of a microscope. He did use a microscope to observe the fibers. However, he made no attempt to analyze the fibers, but merely stated that the fibers found on the cable and those of which the gloves were made were indistinguishable in appearance and appear to be of the same substance. This evidence was competent. Any witness may testify as to the appearance of an object observed. See *Mandich* v. *State* (1946), 224 Ind. 209, 66 N. E. 2d 69. The fact that the witness used a microscope to aid him in his observation is little different than if he had used his bifocal glasses. The instrument was merely an aid with which he was familiar to enable him to better observe the fiber.

We cannot agree with appellant's contention that the witness should have first qualified as an expert on fiber before giving his testimony in this regard. While it is true that had he been an expert on fiber and gone into much greater detail

of fiber comparison, his evidence would have had much greater weight. However, this is not to say that he could not testify as he did concerning the similar appearances of the fibers. His testimony as given was properly submitted to the jury to be weighed considering the detail or lack of detail of the examination.

The appellant next claims the trial court erred in giving its Preliminary Instruction No. 9, which was also repeated as Court's Final Instruction No. 9, and reads as follows:

"While it is necessary that every essential element of the crime charged against the accused should be proved by the evidence beyond a reasonable doubt, this does not mean that all incidental or subsidiary facts should be proved beyond a reasonable doubt. Evidence is not to be considered in fragmentary parts, and as though each fact or circumstance stood apart from the others, but the entire evidence is to be considered. The weight of the testimony to be determined from the other evidence may be weak, if not impossible, but when viewed in connection with surrounding facts and circumstances, it may be so well supported as to remove all doubts as to its existence, as detailed by the witnesses. Acts when considered apart from all other evidence may appear innocent, but when considered with other evidence may import guilt."

The appellant objected to the giving of this instruction on the grounds:

"1. For the reason that it is misleading and prejudicial to the rights of the defendant.

"2. It is not a proper statement of the law relative to weight of testimony in the State of Indiana.

"3. It invades the province of the Jury on their right to determine what testimony does or does not remove the doubt or doubts from their minds in determining the issues of the case."

Appellant concedes that this instruction was taken from the case of *Breedlove* v. *State* (1956), 232 Ind. 429, 134 N. E. 2d 226. It is true the trial judge in the case at bar did make some slight changes in the wording in his Instruction 9 as it was

taken from the *Breedlove* case. Appellant argues that these changes were material, and that they changed the entire meaning of the instructions, thus permitting the jury to find the defendant guilty by application of a standard less than the rule of reasonable doubt.

We cannot agree with appellant's conclusions. Though the wording of Instruction 9 is slightly different than the wording in the instruction in the *Breedlove* case, the sense of the instruction is, nevertheless, clear. The last sentence of the instruction is an accurate summary of its content.

We hold the trial court did not commit reversible error in giving Instruction No. 9.

Appellant next claims the trial court erred in refusing to give his Tendered Instructions Nos. 12 and 14 and giving in lieu thereof Court's Instruction No. 17.

The State first takes the position that the appellant cannot successfully assign as error the refusing of any of his instructions for the reason that he tendered sixteen instructions to the trial court whereas under IND. RULES OF PROC., Rule CR. 8(A) he is limited to ten instructions. The pertinent portion of the Rule reads as follows:

"(A)   In addition to instructions given by the court on its own motion, a party in any cause tried by a jury, before argument, shall be entitled to tender in writing not to exceed ten [10] proposed instructions to be given to the jury. However, the trial court, in its discretion, may fix a greater number in a particular case, which number shall be stated of record by an order book entry made by the court. No party shall be entitled to predicate error upon the refusal of a trial court to give any tendered instruction in excess of the number fixed by this rule or the number fixed by the court order, whichever is greater. Each tendered instruction shall be confined to one [1] relevant legal principle."

The record in this case is silent as to any request on the part of the appellant to be permitted to submit more than the allowed ten instructions. Likewise, the record is silent as to

what reason the trial judge may have had for refusing all sixteen of the appellant's tendered instructions. In view of the existence of the rule, it was quite risky for trial counsel to tender more than the allotted number of instructions without obtaining an express ruling of the trial court on his ability so to do. However, in view of the state of this record and the seriousness of the case, this Court will assume that the trial court did not refuse these instructions because of their number, but because of the adequate coverage of the subject matter by the court's own instructions.

Appellant's Tendered Instruction No. 12 reads as follows:

"When an accused person proves an unblemished reputation, it stands as a factor in the case, tending to fortify and establish innocence; and where the evidence against him is wholly circumstantial, and the testimony for and against him is nearly balanced, the weight of good character ought to exert a potent influence in turning the scale in his favor."

Appellant's Tendered Instruction No. 14 reads as follows:

"The fact that the defendant's reputation for peace and morality had not been discussed in his neighborhood as evidence that he bore a general good reputation for peace and morality in the vicinities wherein he lived."

The Court's Instruction 17 reads as follows:

"The Defendant has introduced witnesses who were asked to give you their opinion as to whether he, at the time of this alleged killing, was a person of good reputation for peace and quietude. This evidence is not admitted to furnish an excuse or license or defense for this alleged killing. Men of good reputation are required to obey the law as well as men of bad reputation.

"The object of the admission of these opinions is for you to consider them, together with all the other evidence in this case, in order to determine whether or not this defendant is guilty or innocent as charged; and if after a fair and honest consideration of such opinions, together with all the other evidence in this case, you are satisfied, beyond a reasonable doubt that he is guilty of murder in the first degree or murder in the second degree, or of manslaughter, then you would be justified in finding him

guilty of that degree of homicide that the evidence satisfies you of his guilt, even though you are satisfied that prior to his trouble he was a person of good reputation for peace and quietude."

The trial court's instruction obviously covers the matter entirely and correctly. See *Ross* v. *State* (1932), 204 Ind. 281, 182 N. E. 865.

We would further observe that the appellant's Tendered Instruction 12 does not correctly state the law and had it been given by the trial judge he would have been in error in invading the province of the jury in instructing them as to the weight they were to give to certain evidence. See *Scheib* v. *United States* (1926), 14 F. 2d 75, cert. denied, 273 U.S. 701, 47 S. Ct. 95, 71 L. Ed. 848.

We, therefore, hold the trial court did not err in refusing to give appellant's Tendered Instructions 12 and 14, nor did he err in the giving of Court's Instruction No. 17.

Appellant next contends the trial court erred in refusing to give defendant's Tendered Instruction 13, which instruction reads as follows:

"Should you find that there is no evidence of the defendant's guilt other than that the defendant had a opportunity to commit the crime charge then I instruct to return a verdict of not guilty."

An examination of the instructions given by the court reveals that the jury was amply instructed that every fact constituting an essential element of the crime charged must be established by the evidence beyond a reasonable doubt before the appellant could be convicted.

In view of these instructions given by the court, we cannot perceive how the appellant could have been harmed by the refusal of the trial court to give his Instruction 13.

The appellant next contends the trial court erred in refusing appellant's Tendered Instructions 15 and 16, which instructions read as follows:

"Evidence has been introduced that the Defendant has been admitted to bail in proceedings before this Court. By the laws of the State of Indiana, a defendant in a murder case may be admitted to bail only if he can prove to the court that the proof of his guilt is not evident or the presumption of his guilt is not strong."

"There has been introduced into evidence in this case, the fact that the defendant, Roy M. Baker, was released from jail on bond. I instruct you that under the laws of the State of Indiana the offense of murder is bailable only when the proof of guilt is not evident or the presumption of guilt strong."

Appellant argues that since the jury in Indiana is the judge of the law as well as the facts the appellant had the right to have the jury informed as to the fact that he had been admitted to bail and to have the jury instructed as to what the law required by way of a finding on the part of the trial court in admitting him to bail. The only case cited by appellant in support of his position is *Bozovichar* v. *State* (1952), 230 Ind. 358, 103 N. E. 2d 680. The *Bozovichar* case was an appeal from the refusal of a trial court to admit the defendant to bail. This Court affirmed the action of the trial court for the reason that the defendant had failed to show that proof of his guilt was not evident, nor that the presumption of his guilt was not strong. We do not see anything in that case which supports the contention of the appellant herein. Appellant cites no Indiana authority, nor do we find any, stating that the jury should be instructed in this regard. Sound reasoning as reflected in cases from other jurisdictions dictates that the jury certainly should not be advised as to whether the appellant was or was not admitted to bail by the trial court.

The proceeding to be let to bail is a matter exclusively for the trial court which occurs prior to the submission of the cause to a jury. The outcome of that hearing is totally irrelevant to the duty relegated to the jury at the subsequent trial. See *Richardson* v. *State* (1880), 9 Tex. App. 612, and *Greason* v. *State* (1903), 118 Ga. 808, 45 S. E. 615.

We, therefore, hold the trial court did not err in refusing appellant's Tendered Instructions Nos. 15 and 16, and we expressly hold that the giving of either of these instructions would have been error.

Appellant next claims the trial court erred in permitting the jury to separate for six days after the trial had commenced. The record reveals that during the course of the trial the father of juror Gilbert L. Burton suddenly died, and that "by agreement of parties this cause is now continued to begin again at 9:00 A.M. Monday, October 4, 1971."

Appellant now takes the position that although his counsel agreed to the adjournment, the appellant himself was not interrogated by the trial judge. Appellant further contends that the record fails to disclose that the jurors were admonished by the court not to converse among themselves nor to suffer others to converse with them on any subject connected with the trial, or to form or express any opinion thereon until the cause was finally submitted as required by IC 35-1-37-2, BURNS' IND. STAT. ANN., 1956 Repl., § 9-1808.

The mere fact that the record fails to disclose that the jurors were admonished cannot be interpreted by this Court that there was no such admonition, in the absence of any showing in the record of any objections by trial counsel or any special bill of exceptions showing the failure or refusal of the trial court to so instruct the jury. As the record now stands, it merely shows that by agreement of the parties the cause was continued. In the absence of any showing to the contrary, we must presume the trial court followed the statute in giving the customary admonition to the jury before they were permitted to separate.

In fact, the appellant in his supplemental motion to correct errors takes the position "that it would be impossible for the jurors to heed the admonition of the Court before separating not to discuss the cause amongst themselves or with anyone else." Thus, it appears that in his motion to correct

errors which was submitted to the trial court the appellant, in fact, concedes the existence of the admonition, but argues its ineffectiveness, whereas in making his argument to this Court he for the first time takes the position there was no admonition. Under the facts of this record, we must presume the trial court did, in fact, properly instruct the jury before they were permitted to separate. *Ford* v. *State* (1951), 229 Ind. 516, 98 N. E. 2d 655.

Appellant further claims that trial counsel was incompetent in agreeing to such a continuance. We certainly cannot agree with this proposition. Appellant was on trial under the serious charge of first degree murder. Competent trial counsel in undertaking to defend appellant under such circumstances, of course, has the duty to hold the State to a strict accounting of its responsibilities, but at the same time counsel must constantly be aware of the fact that appellant's fate is in the hands of twelve jurymen. Human experience and reason dictates that defense counsel conduct himself in such a manner as to appear reasonable and fair in the eyes of the jury. When faced with the factual situation of the death of the father of one of the jurors, counsel would most assuredly have prejudiced his client's case had he insisted that the trial continue, and that the affected juror be forced to continue to serve notwithstanding his personal tragedy. Such conduct on the part of counsel would approach asininity and would in itself have been far greater grounds for this court to declare incompetency than the course chosen to which appellant now so strongly objects.

We hold the trial court did not err in granting the continuance.

We further hold that trial counsel was not incompetent in agreeing to such a continuance.

We find no reversible error in this case.

The trial court is, therefore, affirmed.

Arterburn, C.J., Hunter and Prentice, JJ., concur; DeBruler, J., not participating.

NOTE.—Reported in 298 N. E. 2d 445.

## ON PETITION FOR REHEARING

GIVAN, J.—The appellant has filed a petition for rehearing to which he has attached the alleged results of a polygraph examination made by an independent laboratory on July 18, 1973, and July 24, 1973.

Appellant alleges that he voluntarily submitted to this test, and that it establishes his innocence of the crime charged. This test was given subsequent to the submission of this appeal, has apparently never been submitted to the trial court and is, at most, additional evidence which might be submitted to a trier of fact for an evaluation.

As it is presented to us for the first time on this petition for rehearing, it is no more than a conclusion of fact which this Court is in no position to weigh or pass upon. In a similar situation this Court stated:

"We do not here pass upon the validity of a polygraph test because we do not believe it incumbent upon us to make that legal judgment at this time. However, we must conclude that a polygraph test, the same as any other scientific evidence, certainly can only be presented by the technician presenting testimony before the court with all counsel present as well as the defendants present. The defendants, by their counsel, certainly should have the right to examine the technician concerning the validity of the test; the questions propounded during the test; the technician's training; and all other matters pertinent to the validity of any scientific investigation." *Carpenter* v. *State* (1968), 251 Ind. 428, 431, 241 N. E. 2d 347, 15 Ind. Dec. 724.

Other matters raised by the appellant in his petition for rehearing are adequately covered in the original opinion.

Arterburn, C.J., Hunter and Prentice, JJ., concur; DeBruler, J., not participating.