FLORENCE STARKEY *v.* STATE OF INDIANA.

[No. 676S180. Filed April 19, 1977.]

*Michael E. Smith,* of Indianapolis, for appellant.

*Theodore L. Sendak,* Attorney General, *David A. Arthur,* Deputy Attorney General, for appellee.

GIVAN, C.J.—Appellant was indicted for first-degree murder of her husband. A jury trial resulted in a verdict of guilty

to the lesser included offense of second-degree murder. Appellant was sentenced for a term of 15 to 25 years imprisonment. The record reveals the following:

On October 14, 1974, the deceased arrived at his home about 12:30 a.m. under the influence of marijuana. A dispute arose between the appellant and the decedent. Appellant's daughter testified that she was awakened by her mother's screaming and saw the deceased chasing the appellant about the house. The decedent then entered the daughter's bedroom and placed his hands on her chest trying to get her up. Appellant appeared at the door and told the decedent to get away from her daughter. The decedent turned around and at that point appellant shot him. He fell backwards across the bed then again got to his feet and was shot again by the appellant.

After the shooting appellant called several people and told them that she had just shot her husband. When police arrived they found the decedent unconscious, lying on the bed with two bullet wounds in his chest. Appellant's handgun, later identified as the weapon used, was found on a dresser. The trigger rebound spring on the gun did not work, thus requiring the trigger to be manually moved forward before firing a second shot. A letter was found in the apartment written by the appellant the day before the shooting. In the letter she stated that no one would ever use her again. Several witnesses testified that the appellant had threatened to kill or injure her husband on previous occasions.

The appellant testified that when the decedent arrived home he was under the influence of marijuana, that he hit and kicked her and laughed at her and, that as the decedent was chasing her through the house, she remembered her gun which had been placed under the couch. When appellant went into her daughter's room she obtained the weapon because she was afraid he was going to hurt her daughter. Appellant stated that when she appeared at the bedroom door the decedent rushed at her and she shot him. When he got up and rushed at her a second time she again shot him.

Appellant's sister testified that when she arrived a short time after the shooting the appellant was hysterical and that her face was swollen and her legs were bruised.

Appellant first argues that the evidence is insufficient to sustain the conviction. She claims the evidence establishes as a matter of law that she acted in self defense. Appellant concedes the law to be that this Court will look only to the evidence most favorable to the State, together with all logical and reasonable inferences. *Baker* v. *State,* (1973) 260 Ind. 618, 298 N.E.2d 445. This Court will not reweigh the evidence nor determine the credibility of witnesses. *Blake* v. *State,* (1975) 262 Ind. 659, 323 N.E.2d 227. In order to establish second degree murder the State must prove that the defendant (1) purposely and (2) maliciously (3) killed a human being (4) without premeditation. IC 35-1-54-1 [Burns 1975]. Purpose and malice may be inferred by the use of a deadly weapon in a manner likely to cause death. *Jones* v. *State,* (1970) 253 Ind. 456, 255 N.E.2d 105.

In cases where self defense is put in issue the State must produce evidence to show that the defendant did not meet one or more of the requirements of the defense. *Banks* v. *State,* (1971) 257 Ind. 530, 276 N.E.2d 155. In making its decision as to whether or not self defense was a factor, the jury must look to the situation from the defendant's viewpoint. This does not mean, however, that the jury is required to believe the defendant's evidence. *Williams* v. *State,* (1974) 262 Ind. 382, 316 N.E.2d 354.

In the case at bar there is a conflict of evidence. Clearly the appellant's testimony, if believed, would establish the defense of self defense. However there is also evidence of prior statements and threats against the deceased. There is evidence that appellant had removed the pistol from her bedroom and placed it under the couch on which she had been lying. There is evidence that the deceased was drowsy and quiet due to having smoked marijuana when he left his

friends a few minutes before the shooting. There is conflicting evidence of the deceased's propensity for violence. There is evidence that the pistol had to be reactivated in order to fire a second shot. Thus there is evidence in this record from which the jury could find that the deceased either did not attack the appellant or that he had ceased his attack upon the appellant when he was shot.

We therefore hold that there is sufficient evidence in this record to sustain the verdict of the jury.

Appellant next argues that the court erred in admitting State's Exhibit 14 over her objection. Exhibit 14 is a certified copy of the coroner's verdict and transcript of evidence, including the autopsy report in the matter of the death of the decedent. The trial court admitted only that part of the report which showed the objective findings of the physician who performed the autopsy. The conclusions of the doctor and the coroner were specifically excluded. Appellant urges that the exhibit constituted inadmissible hearsay and deprived her of the right to cross examine the physician.

In *Wells* v. *State,* (1970) 254 Ind. 608, 261 N.E.2d 865, this Court noted the definition of hearsay as testimony in court or written evidence of a statement made out of court which statement is being offered to prove the matters asserted therein and resting for its value upon the credibility of the out of court declarant. However the public document exception to the hearsay rule permits the admission of the autopsy report.

In McCormick, *Evidence* § 315, it is stated:

"A common law exception to the hearsay rule exists for written statements of public officials made by officials with a duty to make them, made upon firsthand knowledge of the facts."

In Indiana this exception is also covered by statutory authority. IC 34-1-17-7 [Burns 1975], reads as follows:

"Exemplifications or copies of records, and records of deeds and other instruments, or office books or parts

thereof, and official bonds which are kept in any public office in this state, shall be proved or admitted as legal evidence in any court or office in this state, by the attestation of the keeper of said records, or books, deeds or other instruments, or official bonds, that the same are true and complete copies of the records, bonds, instruments or books, or parts thereof, in his custody, and the seal of office of said keeper thereto annexed if there be a seal, and if there be no official seal, there shall be attached to such attestation, the certificate of the clerk, and the seal of the circuit or superior court of the proper county where such keeper resides, that such attestation is made by the proper officer."

In the case at bar a foundation was laid that Dr. Esparza, a deputy coroner, performed the autopsy on the decedent and filed the autopsy report. The State also produced evidence that this report was an official document of the coroner's office. IC 17-3-17-4 [Burns 1975] permits the coroner, when he deems it necessary to discharge his duties, to order an autopsy by a pathologist. Thus the requirement of the public document exception to the hearsay rule has been met.

Appellant also urges that the body on which the autopsy was performed was not identified as that of the decedent. Appellant is in error. Although the deputy coroner's certification did not identify the decedent as the subject of the autopsy and report, this omission was supplied by in-court testimony.

We therefore hold there was no error in admitting the autopsy report into evidence.

Appellant next claims the trial court erred in admitting State's exhibits numbered 20 and 21, due to a lack of chain of custody. Exhibits numbered 20 and 21 were identified as the two bullets which Dr. Esparza removed from the body of the decedent. The evidence shows that after the removal of the bullets from the body of the decedent, Officer Schoppenhorst placed them in the police property room. When the exhibits were withdrawn from the property room for the trial they were enclosed in an envelope. A similar situation was presented by *McMinoway* v. *State*, (1973) 260 Ind.

241, 294 N.E.2d 803, where non-fungible exhibits, for which there was no accounting for a period after police took possession of them, were admitted into evidence. In that case the court stated:

"'* * * We feel that the location of the bag during the days in question has been sufficiently accounted for. A mere possibility that the evidence could have been tampered with will not make it totally objectionable. Therefore the verdict will not be reversed on the basis of the admissibility of these exhibits.' *Kolb* v. *State*, (1972) 258 Ind. 469, 282 N.E.2d 541. We find nothing about the foregoing circumstances to render them suspect." 260 Ind. at 244.

Appellant also urges the trial court erred in excluding evidence of the character of the deceased during the direct examination of defense witness, Janey Banks. However at the time of the excluding of the evidence the defendant made no offer to prove, thus requiring this Court to speculate as to the answer. When no offer to prove is made the issue as to the exclusion of the evidence is waived. *Strickland* v. *State*, (1977) 265 Ind. 664, 359 N.E. 2d 244.

We find no reversible error in this record. The trial court is therefore affirmed.

Arterburn, Hunter and Prentice, JJ., concur; DeBruler, J., concurs with opinion.

## CONCURRING OPINION

DeBruler, J.—It is my understanding in concurring with the majority on the issue of the admissibility of Exhibit 14, being the written report of the objective findings of deputy coroner Esparza, that Dr. Esparza was dead at the time of trial and therefore unavailable as a witness, and that the issue is not presented in this case and the Court does not hold that the public document exception to the hearsay rule as it is formulated and applied in the majority opinion, conforms to the requirements of the state and federal constitu-

tional provisions guaranteeing the right of one accused of crime to confront the witnesses against him.

NOTE.—Reported at 361 N.E.2d 902.