Ollie Eugene GILLIE, Appellant
(Defendant Below),

v.

STATE of Indiana, Appellee
(Plaintiff Below).

No. 1082 S 407.

Supreme Court of Indiana.

July 9, 1984.

Howard B. Lytton, Jr., Steven E. Ripstra, Lytton & Ripstra, Jasper, for appellant.

Linley E. Pearson, Atty. Gen., Lisa M. Paunicka, Deputy Atty. Gen., Indianapolis, for appellee.

PRENTICE, Justice.

Following a trial by jury, Defendant (Appellant) was convicted of Theft, a class D felony, Ind.Code § 35–43–4–2 (Burns 1979), Robbery, a class B felony, Ind.Code § 35–42–5–1 (Burns 1979), and Criminal Confinement, a class B felony, Ind.Code § 35–42–3–3 (Burns 1979), and was found to be an Habitual Offender, Ind.Code § 35–50–2–8 (Burns Supp.1983). He was sentenced to two (2) years imprisonment upon the theft charge, fifteen (15) years imprisonment upon the robbery charge, and fifteen (15) years upon the criminal confinement charge, said sentences to be enhanced by five (5) years upon the habitual offender finding, and all sentences to be served consecutively. His direct appeal presents ten (10) issues for review, one of which compels us to reverse the convictions for robbery and criminal confinement. With respect to the theft conviction and the enhancement of its sentence upon the habitual offender finding, we affirm.

The record disclosed that on August 14, 1980, the Defendant committed a robbery at the Cambelltown Branch of the First National Bank of Winslow, Indiana. Gun in hand, he demanded that one employee, Kathryn Harker, lock the door of the bank and ordered both Harker and a second employee, JoAnn Radcliff, to enter the vault. Radcliff was ordered to put money into a sack. He then told the two women to remain in the vault and to lie on the floor. In the course of the robbery investigation, the police discovered a white Ford Pinto automobile, which was registered in Defendant's name and which had been reported stolen from an automobile dealership in Fort Wayne, Indiana. Subsequently, Defendant was arrested in Texas, returned to Indiana, and charged with theft, robbery, and criminal confinement.

On January 15, 1981, the State filed informations charging Defendant with robbery and criminal confinement. Both informations purported to charge class B felonies; however, they only charged class C felonies. On February 11, 1981, after Defendant had filed a motion to dismiss the informations, the State moved to amend its informations by adding the allegation that, in each case, Defendant was armed with a deadly weapon when he committed the offenses. On February 18, 1981, the State filed its "Notice of Filing Amended Informations." On March 3, 1981, Defendant objected to the amendments, and a hearing was held on the motion to amend. The

trial court took the motion under advisement and subsequently allowed the amendments on March 9, 1981. On March 3, 1981, the Defendant waived formal arraignment and entered a plea of not guilty to all three counts. Defendant argues that the trial court erred in granting the State's motion to amend in violation of Ind.Code § 35–3.1–1–5. We agree.

The procedural problem here presented is essentially identical to that presented in *Trotter v. State*, (1981) Ind., 429 N.E.2d 637 and is governed by the same subsection of the statute (since repealed) that controlled there. In *Trotter*, we wrote:

"The defendant charges that in permitting the aforesaid amendment, the trial court violated subsection (e) of Ind.Code § 35–3.1–1–5 (Burns 1979), [footnote omitted] which is as follows:

"'(e) Notwithstanding any other provision in this section, an indictment or information shall not be amended in any respect which changes the theory or theories of the prosecution as originally stated, or changes the identity of the offense charged; nor may an indictment or information be amended after arraignment for the purpose of curing a failure to charge or state an offense or legal insufficiency of the factual allegations.'

(Repealed September 1, 1982.)

"Theory of the case is defined as 'Facts on which the right of action is claimed to exist'. (Black's Law Dictionary, Third Edition.) There is a substantial difference in the facts that constitute the two offenses. Hence, we believe that it cannot be said that the amended information did not change the theory of the prosecution.

"The code section above cited is a substantial departure from the former law in several respects and restricts the prosecutors and trial judges in several particulars not previously encountered.

"The purpose of an indictment or information is first to inform the court of the facts alleged, so that it may decide whether or not they are sufficient in law to support a conviction, and second, to furnish the accused with such a description of the charge against him as will enable him to make his defense and avail of his conviction or acquittal for protection against further prosecution for the same offense. *State v. Allen*, (1895) 12 Ind.App. 528, 40 N.E. 705.

"In view of the above stated purpose, we are at a loss to understand why the State should not be entitled to amend charges, even as to theory and identity, as we understand such terms, when it can be done without prejudicing the substantial rights of the accused. Nor do we see how the accomplishment of a change in charges by amendment, prior to arraignment, can be objectionable when the dismissal and refiling of charges would not be proscribed by the statute of limitations or speedy trial rules. Yet subsection (e) leaves no discretion in the trial judge in such matters.

"We are, therefore, compelled to hold that the trial court erred in permitting the amendment and that the defendant was convicted of a crime for which he had not been charged."

*Id.* at 640–641.

Consequently, Defendant's convictions for robbery and criminal confinement are reversed.

In order to support our affirmance of the theft conviction and the enhancement of its sentence upon the habitual offender finding and to guide the trial court upon retrial of the robbery and criminal confinement charges, we address the following issues raised by the Defendant:

(1) Whether the trial court erred in denying Defendant's motions for a change of venue based upon pretrial publicity;

(2) Whether the trial court erred in denying Defendant's Motion to Suppress predicated upon his claim of a tainted lineup identification;

(3) Whether the trial court erred in denying Defendant's Motion to Suppress predicated upon his claim that hair and handwriting samples should not have been tak-

en inasmuch as he was without the assistance of counsel;

(4) Whether the trial court erred in scheduling Defendant's trial beyond the seventy (70) day limit imposed by Indiana Rule of Criminal Procedure 4(B);

(5) Whether the trial court erred in not dismissing the habitual offender charge because of improper notice of the hearing to Defendant;

(6) Whether the trial court erred in allowing Defendant's trial testimony to be used in the habitual offender portion of the trial;

(7) Whether the trial court erred in refusing to give Defendant's tendered instruction number 7 concerning the "mere opportunity" to commit the crimes charged;

(8) Whether the trial court erred in denying Defendant's Motion for a Directed Verdict.

### ISSUE I

The Defendant filed two motions for a change of venue from the county, one shortly after the charges were filed and one a week before the commencement of trial. Full evidentiary hearings were held on each of the motions, which were subsequently denied. In addition, Defendant renewed the motion at the close of voir dire examination of the jury. Again, the motion was denied.

In support of the motions, the Defendant argued that pretrial publicity prevented his receiving a fair trial in Pike County. At the first hearing Defendant introduced newspaper accounts which contained the alleged facts of the robbery and the fact that Defendant was a suspect. His photograph appeared in a newspaper, and one article indicated that he had a police record. He also introduced several affidavits of persons living in Pike County which stated that, in their opinion, Defendant could not receive a fair trial there. At the second hearing, Defendant introduced a newspaper article which had appeared in the May 28, 1981 *Petersburg Press Dispatch*, a weekly newspaper, and which had erroneously stated that Defendant had pled guilty to robbery and theft. One week later a second article appeared which retracted the earlier story. It went on to report that Defendant had refused to sign a plea-bargain agreement.

During voir dire examination of prospective jurors, most of those questioned stated that they regularly read the *Press Dispatch*. Some admitted having heard or read that Defendant was a suspect or connected with the bank robbery. All jurors who were selected to try the case, however, stated that they did not remember the substance of the accounts, merely that a robbery had occurred at the bank and a suspect had been apprehended, and that they would not be influenced by anything which they had read or heard.

 The ruling upon a motion for change of venue is within the discretion of the trial court, and that ruling will not be disturbed, absent a clear showing of abuse. *Dorton v. State*, (1981) Ind., 419 N.E.2d 1289, 1294; *Haybron v. State*, (1979) 272 Ind. 190, 191, 396 N.E.2d 891, 892; *Mendez v. State*, (1977) 267 Ind. 67, 70, 367 N.E.2d 1081, 1083. The Defendant bears the burden of showing that community bias or prejudice exists which would prevent his obtaining a fair trial in that county. *Underhill v. State*, (1981) Ind., 428 N.E.2d 759, 763; *Willard v. State*, (1980) 272 Ind. 589, 595, 400 N.E.2d 151, 156; *Haybron v. State*, 272 Ind. at 191, 396 N.E.2d at 892. It is the trial court's role to weigh the evidence of potential community bias and to assess the credibility of the jurors during voir dire examination in determining whether a defendant could receive a fair trial. *Underhill v. State*, 428 N.E.2d at 1289.

 The newspaper articles about which Defendant complains were published from a few months to one year before the trial. They presented factual accounts of the crime and information about the suspect, the Defendant. The erroneous story of May 28, 1981 was retracted on June 4, 1981. None of the articles sensationalized

the crime as in *Irvin v. Dowd,* (1961) 366 U.S. 717, 725, 81 S.Ct. 1639, 1644, 6 L.Ed.2d 751, 757 and *Baniszewski v. State,* (1970) 256 Ind. 1, 10, 261 N.E.2d 359, 363. During voir dire examination, the one prospective juror who gave equivocal answers to questions regarding the articles' influence upon him was ultimately excused. The jurors who were selected to try the case all stated that they could judge the Defendant upon the evidence adduced at trial and that they had formed no opinions in advance of trial. Defendant was required to show that potential jurors were unable to set aside preconceived notions of guilt, if any, and to render a verdict based upon the evidence. *Sage v. State,* (1981) Ind., 419 N.E.2d 1286, 1287. This he has failed to do, and we find no error.

### ISSUE II

Defendant argues that an identification of him made at a pre-trial lineup should have been suppressed for two reasons: (1) the two (2) witnesses who identified him had been shown a picture of him by the police and had seen his picture in a local newspaper; and (2) those witnesses were told that the suspect would be in the lineup. Following a hearing on his motion to suppress this evidence, it was denied.

 Due process requires the exclusion of testimony of an out of court identification which was conducted in an unduly suggestive manner. *Stovall v. Denno,* (1967) 388 U.S. 293, 302, 87 S.Ct. 1967, 1972, 18 L.Ed.2d 1199, 1206. In determining whether a pre-trial identification was tainted, this Court looks to the totality of the circumstances to determine whether the confrontation was conducted in such a way that it created a substantial likelihood of irreparable misidentification. *Wright v. State,* (1972) 259 Ind. 197, 201, 285 N.E.2d 650, 653.

 In the case at bar, the suggestive influence of the pictures of Defendant viewed by the witnesses did not render the lineup unduly suggestive. During the lineup, the Defendant had worn a ski mask with only eye openings, as did the robber at the time of the crime; thus, Defendant had not been identified by his facial features. In addition, both witnesses testified that they had been shown the Defendant's picture two or three days after the robbery and that it had appeared in the local paper one week after the robbery. Neither had viewed the picture since that time. The lineup procedure had been held nearly six months after the witnesses had seen the pictures, and both testified that seeing the pictures had had no bearing, whatsoever, on the choice made at the lineup.

Defendant's argument that the witnesses were told that the suspect would be in the lineup is without a factual basis. Detective Eck stated that he had "probably" told the witnesses that Defendant would be a participant and that he assumed they would know the suspect would be one of the group. Both witnesses, however, stated unequivocally that they had not been told that Defendant would be in the lineup and that, in fact, they had been told that they need not make an identification of any of the participants.

 In all respects the lineup was conducted in proper fashion. The Defendant was one of six (6) men who were similarly attired and of similar physical characteristics. All wore ski masks, read identical prepared statements of the words used by the robber, and coughed several times. Each witness, without conversing with the other, marked a card with the Defendant's number in the lineup. One witness stated that she based her identification upon Defendant's voice, and the other said that she based her identification upon Defendant's voice and cough.

 Defendant argues that the discrepancy between the height and weight descriptions given of the robber and those of the Defendant tainted the identification. However, the jury was well aware of these discrepancies which affect only the weight and credibility of the testimony of the witnesses, not its admissibility. *Allen v. State,* (1981) Ind., 428 N.E.2d 1237, 1239.

We do not find that the lineup procedure was unduly suggestive.

## ISSUE III

■■■ Defendant argues that hair samples taken on December 1, 1980 and writing samples taken on December 16, 1980 should have been suppressed because they were taken before he met with his attorney and because such tests violated his right against self-incrimination. No writing sample was taken on December 16, 1980, although one was taken on February 5, 1981 after Defendant had the advice of counsel.

We have held many times that the right to counsel attaches at the critical stages of criminal proceedings and that legal counsel is not required for perfunctory, administrative procedures such as the taking of fingerprints and handwriting exemplars. *Frances v. State,* (1974) 262 Ind. 353, 357, 316 N.E.2d 364, 366 (*rehearing denied*). The taking of a hair sample is one of those procedures for which legal counsel is not required. As when a handwriting examplar is taken, the risk that the absence of counsel might derogate from a defendant's right to a fair trial is minimal. *Hollars v. State,* (1972) 259 Ind. 229, 232, 286 N.E.2d 166, 168. Further, the Fifth Amendment privilege against self-incrimination protects a defendant only from testimonial compulsion and not from compulsory submission to tests that are merely physical or produce evidence that is only physical in nature. *Gilbert v. California,* (1967) 388 U.S. 263, 266, 87 S.Ct. 1951, 1953, 18 L.Ed.2d 1178, 1182. *Pearson v. State,* (1982) Ind., 441 N.E.2d 468, 474; *Clark v. State,* (1982) Ind., 436 N.E.2d 779, 781; *Allen v. State,* (1981) Ind., 428 N.E.2d 1237, 1239; *Hollars v. State,* (1972) 259 Ind. 229, 232, 286 N.E.2d 166, 168.

## ISSUE IV

■■■ Defendant argues that the trial court erred when it set the trial for a date beyond a seventy (70) day limit of criminal Rule 4(B). On January 26, 1981, Defendant requested an early trial; consequently, the trial should have been scheduled for a date on or before April 6, 1981. On March 3, 1981, the court set the trial for May 26, 1981, noting that pre-scheduled criminal trials and juvenile fact finding hearings precluded a trial date before April 6 and that the earliest possible date for the trial was May 26, 1981. The Defendant promptly objected to the setting of the trial date beyond the seventy (70) day period, and on June 22, 1981 filed his motion for discharge. That motion was denied after a hearing on September 21, 1981.

This Court has held many times that the trial court may, on its own motion, schedule a trial for a date beyond the seventy day period, when the congested nature of its calendar precludes a trial date within the early trial time frame. *Jordan v. State,* (1982) Ind., 435 N.E.2d 257, 258; *Loyd v. State,* (1980) 272 Ind. 404, 408, 398 N.E.2d 1260, 1265, *cert. denied* 449 U.S. 881, 101 S.Ct. 231, 66 L.Ed.2d 105; *Gill v. State,* (1977) 267 Ind. 160, 164, 368 N.E.2d 1159, 1162; *Harris v. State,* (1971) 256 Ind. 464, 466, 269 N.E.2d 537, 539. "The reasonableness of such delay must be judged in the context of the particular case, and the decision of the trial judge will not be disturbed except for an abuse of discretion." *Loyd v. State,* 272 Ind. at 409, 398 N.E.2d at 1265. Defendant has made no showing of error or impropriety in the court's determination that the calendar was congested.

On May 26, 1981, the date set for trial, the attorneys for the parties informed the court that Defendant had refused to sign a plea-bargain agreement. On that date, too, Defendant's counsel withdrew. New counsel was appointed on June 16, 1981, at which time, by agreement of the parties, trial was set for September 21, 1981. In light of these circumstances, it cannot be said that the trial court abused its discretion in setting the trial beyond the seventy day time period.

## ISSUE V

■■■ Defendant argues that the habitual offender charge should have been

dismissed because he had not been adequately notified of the habitual offender hearing. On May 26, 1981, the State filed its "Notice of Habitual Offender Status." Defendant was convicted of theft, robbery, and criminal confinement on September 25, 1981. The record disclosed that the court scheduled "sentencing" for October 13, 1981 and then, at Defendant's request, rescheduled the proceeding for October 21, 1981. Although Defendant was apparently aware that the habitual offender portion of the trial would be held at that time, he claims that "specific notice of the time and date of the habitual offender hearing was not set out in the record." His argument appears to be that the use of the word "sentencing" rather than "habitual offender hearing" constituted inadequate notice. His argument is without merit.

The habitual offender statute, Ind.Code § 35–50–2–8, refers to the proceeding as a "sentencing hearing." Defendant had a right to reasonable notice and an opportunity to be heard regarding the habitual offender claim. *McConnell v. State*, (1982) Ind., 436 N.E.2d 1097, 1102; *Barnett v. State*, (1981) Ind., 429 N.E.2d 625, 626. He did have adequate notice, and in addition, even though the court afforded him the opportunity to seek a continuance, he declined to do so. He conceded that he was prepared to defend against the habitual offender claim, and he has failed to show that he was harmed, in any way, by the phrasing of the court's minute entry.

## ISSUE VI

During the trial on the underlying felonies, Defendant testified that he had been previously convicted for automobile theft and forgery, the two prior unrelated felonies upon which the habitual offender enhancement of sentence was sought. During the habitual offender portion of the trial, his trial testimony was introduced into evidence over his objection that the use of it violated his Fifth Amendment right against self-incrimination and his due process guarantees.

The testimony Defendant challenges was given without objection and became a matter of record. The same jury which heard the evidence on the underlying felonies also heard the evidence in the habitual offender portion of the trial. In *Lawrence v. State*, (1972) 259 Ind. 306, 312, 286 N.E.2d 830, 833, we explained that the reason for bifurcating trials with habitual offender charges is to protect the accused from taint inherent in the disclosure of prior convictions during trial on the underlying felony. We are not aware, however, of any principle or authority that would preclude consideration or readmission of evidence derived from the trial on the underlying count in the habitual offender portion of the proceedings, and Defendant has referred us to none. Further, the two prior convictions were proved by other competent and unrefuted evidence.

## ISSUE VII

Defendant argues that the trial court erred in refusing to give his tendered instruction number 7 which advised that guilt beyond a reasonable doubt may not be established by showing the mere opportunity to commit the crime. While the instruction is a correct statement of the law, the evidence did show more. Further, it is not reversible error for the trial court to refuse to give an instruction when the substance thereof is adequately covered by other instructions given by the court. *Tawney v. State*, (1982) Ind., 439 N.E.2d 582, 587. The trial court instructed the jury that the State must prove the Defendant guilty of each essential element of the crime charged, beyond a reasonable doubt, and fully explained the meaning of the term "reasonable doubt" to the jury. Thus, it was not error for the court to refuse to give Defendant's tendered instruction number 7. *See Baker v. State*, (1973) 260 Ind. 618, 627, 298 N.E.2d 445, 451 *(rehearing denied )*.

## ISSUE VIII

Defendant argues that his motion for a directed verdict should have been

granted with regard to all, or a portion, of the charges. Inasmuch as we are reversing the robbery and criminal confinement convictions, we will here address only the motion directed to the theft conviction, which we are affirming. In *Page v. State*, (1980) Ind., 410 N.E.2d 1304, 1306–1307, we stated our standard for evaluating the refusal of the trial court to grant a directed verdict:

> "In order for the State to avoid a judgment on the evidence, a mere *prima facie* case must be demonstrated. In other words, a judgment on the evidence is appropriate only where there is an absence of evidence upon some essential element or if the evidence is without conflict and is susceptible to but one inference which inference is in favor of the accused." (citation omitted).

The record disclosed that a 1975 white Ford Pinto automobile was reported to have been stolen from Glen Brook Dodge in Fort Wayne, Indiana on July 30, 1979, after it had been missing for three days. On August 12, 1980, Robert Cummines noticed a white Ford Pinto parked along the side of the road about one-half mile from the Cambelltown Branch of the First National Bank of Winslow, Indiana. Inasmuch as he had never before seen the automobile, which bore out of county license plates, he was curious and approached the car. The driver, who had been sleeping, identified himself as Gene Gillie, the Defendant, and the two men talked for five to ten minutes. Two days later, after Cummines heard about the robbery at the bank, he notified police of the automobile that had aroused his suspicions and gave them its license number. It was subsequently identified as the vehicle reported to have been stolen from Glen Brook Dodge; and, among other things, the Defendant's wallet and identification were found in the automobile, and his fingerprints were found on items in the car. In addition, a former cell mate of the Defendant testified that the Defendant had told him that he had had to abandon his Pinto automobile because he had been spotted by a squirrel hunter. The Defendant testified that he had purchased the car from Glen Brook Dodge about the time that it was reported as having been stolen, but the vehicle was not titled to him, nor was there any record of the purchase at Glen Brook Dodge. Such evidence was sufficient to constitute a *prima facie* showing of theft.

We affirm the theft conviction and the habitual offender enhancement of sentence thereon. We reverse the convictions for robbery and criminal confinement and remand this cause to the trial court for a new trial thereon.

GIVAN, C.J., and HUNTER, DeBRULER and PIVARNIK, JJ., concur.