# FOR PUBLICATION



ATTORNEY FOR APPELLANT:

**GILDA W. CAVINESS**
Caviness Law Office, LLC.
Rushville, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**IAN MCLEAN**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| ANTHONY MARK SEWELL, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 73A01-1112-CR-609 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE SHELBY CIRCUIT COURT
The Honorable Charles D. O'Conner, Judge
Cause No. 73C01-1108-FD-178

**August 28, 2012**

**OPINION - FOR PUBLICATION**

**KIRSCH, Judge**

Anthony Mark Sewell ("Sewell") appeals his conviction of committing a sex offender residency offense[1] as a Class D felony, contending that the evidence was insufficient to support his conviction and that the conviction violated the prohibition against *ex post facto* provisions in both the federal and state constitutions.

We affirm.

## FACTS AND PROCEDURAL HISTORY

Sewell was convicted of child molesting as a Class B felony in 2001. He was released from the Department of Correction in 2007 and placed on probation. Sewell, as an offender against children, was required to register his address with law enforcement. By July 2011, Sewell had registered seventeen times with the Shelby County Sheriff's Department ("SCSD"). Each time Sewell registered, the Shelby County Sex Offender Registry Clerk ("Registry worker") would check Sewell's address against a computerized map, which indicated the distance from that address to any known addresses of churches, schools, or other locations having youth program centers. Sewell was also given an information packet in which his registry obligations were discussed. The packet included the explanation that Sewell was not allowed to spend more than two nights within any thirty-day period in a residence that was within 1,000 feet of a youth program center. A Registry worker would orally explain the information to Sewell each time he registered. Sewell would then initial and sign the information packet in the presence of a Registry worker, who countersigned the form.

---

[1] *See* Ind. Code § 35-42-4-11(c).

2

In June 2011, Sewell went to the SCSD registry and informed them that he intended to move to 42 West Brookville Road in Fountaintown. A Registry worker checked the address against the computerized map and informed Sewell that his proposed residential address was within 1,000 feet of a church. That church, the Community Church of Fountaintown, was within 1,000 feet of 42 West Brookville Road. The Registry worker explained to Sewell that he would violate the law if he lived within 1,000 feet of the church and if the church maintained a school, day-care, or youth program center. The Registry worker told Sewell that if he could obtain a statement from the church that it did not house those facilities or activities, he might be able to reside within 1,000 feet of the church's property. Sewell decided not to change his residential registration at that time.

On July 1, 2011, Sewell returned to the SCSD registry and attempted to register 42 West Brookville Road as his residential address. Sewell had a letter from Pastor Michael Smith of the church, which included the statement that the church did not have a day-care or school on the property. Because the letter made no mention of youth programs, the Registry worker called the church to inquire about the church's operations. In that telephone call, Pastor Smith verified that the church had a youth program for children younger than eighteen years of age on Sunday evenings from 5:00 p.m. until 7:00 p.m. Based upon that information, the Registry worker told Sewell that he could not live within 1,000 feet of the church without violating the law. Sewell disputed what the Registry worker said and produced a video-recording cell phone. The Registry worker repeated that Sewell could not live within 1,000 feet of the church without violating the law. Sewell then told the Registry

3

worker that the rent at his present address was paid until July 3 or July 4, 2011 and that he would remain there until then.

On July 5, 2011, Sewell returned to the SCSD registry, this time with Pastor Smith. Sewell registered 42 Brookville Road as his new residential address. The Registry worker used a previous map printout to remind Sewell that the address was within 1,000 feet of a youth program center. Sewell explained that Pastor Smith came with him to clear everything up. The Registry worker replied, "Anthony it's not gonna matter if I speak with the minister or not, that address still violates the 1,000 feet" restriction. *Tr.* at 30. Pastor Smith went to speak to the Shelby County Sheriff. Pastor Smith recalled being confused about the reason why it was fine for Sewell, who had recently become a member of the church, to attend church services, but was prohibited from living within 1,000 feet of the church.

Pastor Smith returned to the registration desk after speaking with the sheriff. Sewell told the Registry worker that he would register the address as his temporary residence. The Registry worker informed Pastor Smith that registering the address as a temporary residence did not exempt the address from the 1,000 foot exclusion zone, and that Sewell's residence there would be a violation of the law. The Registry worker recalled telling Sewell that many other offenders who had tried the same or similar thing had been in violation of the 1,000 foot exclusion zone. Sewell registered the address as his residence nonetheless.

Sergeant James Lacy ("Sergeant Lacy") of the SCSD was assigned to check the residential addresses of registered sex offenders. On July 1, 2011, Sergeant Lacy received an e-mail from the SCSD registry that Sewell's residence at 42 West Brookville Road violated

the law. Sergeant Lacy received a further report from the SCSD registry on July 5, 2011. Sergeant Lacy traveled to the address at slightly past midnight on July 6, 2011 and contacted Sewell, who verified in writing that he was living at that address. Sergeant Lacy warned Sewell that residing at that address was in violation of the law. Sewell argued with Sergeant Lacy about whether Sewell's residence there in fact violated the law.

During the weeks that followed, Sewell returned to the SCSD registry to re-register the address as a temporary residence. Sewell also made frequent calls to the Registry worker who met with him in July and indicated that he was trying to find another address, but that he could not move because he was ill, or that he could not move because he lacked the money for another residence. Sewell also complained about the fact that SCSD would not allow him to live within 1,000 feet of the church, even though he had given them a letter from Pastor Smith. The Registry worker reminded Sewell that the letter omitted information about youth programs, which the church had, and that Sewell could not live within 1,000 feet of a youth program center. Sewell was reminded on several occasions that Registry workers could not change the law or grant exemptions.

On July 11, 2011, Sergeant Lacy attempted to verify Sewell's residence at 42 West Brookville Road. At approximately midnight of that same evening, Sergeant Lacy located Sewell at Sewell's mother's house in Shelbyville. Sewell's mother's house is within 1,000 feet of a day-care center. Sergeant Lacy spoke with Sewell, who indicated that he was staying at his mother's house in order to attend an appointment with Sewell's probation officer the following day. Sewell told Sergeant Lacy that he had been living at 42 West

5

Brookville Road since July 5, 2011, and also indicated that he had a letter from a pastor of the church. Sewell stated that he had intended to show the letter to the prosecuting attorney but had not done so yet. Sergeant Lacy reminded Sewell that he could not reside within 1,000 feet of the church. The officer recalled that Sewell had always been fairly easy to get along with, but that he liked to argue. The officer found Sewell's arguments to be unproductive because the officer enforces the law and does not make the law.

The State charged Sewell with one count of residing within 1,000 feet of a youth program center. At the conclusion of his bench trial, the trial court found Sewell guilty and sentenced him to one and one-half years in the Department of Correction with six months suspended to probation. Sewell now appeals.

## DISCUSSION AND DECISION

Sewell argues that there was insufficient evidence to support his conviction. In particular, Sewell argues that there was insufficient evidence that the church was, in fact, a youth program center. Further, he claims that the evidence does not establish that he knowingly or intentionally resided within 1,000 feet of a youth program center. He also argues that there was insufficient evidence to establish that he was an offender against children.

Our standard of review for sufficiency claims is well settled. In reviewing a claim challenging the sufficiency of the evidence, we do not reweigh the evidence or reassess the credibility of the witnesses. *Bond v. State*, 925 N.E.2d 773, 781 (Ind. Ct. App. 2010). We consider only the evidence most favorable to the judgment and the reasonable inferences

6

drawn therefrom. *Id*. We will affirm if the evidence and those inferences constitute substantial evidence of probative value to support the verdict. *Id*.

We first address Sewell's contention that there was insufficient evidence to establish that the church was a youth program center. In order to convict Sewell, the State was required to prove that, as an offender against children, he knowingly or intentionally resided within 1,000 feet of a youth program center. *See* Ind. Code §35-42-4-11. A youth program center is defined by statute as a "building or structure that on a regular basis provides recreational, vocational, academic, social, or other programs or services for persons less than eighteen (18) years of age." *See* Ind. Code §35-31.5-2-357.[2] "The statute neither explicitly nor implicitly places any limitation on the content of the programs offered or the purposes for which children are present." *Whatley v. State*, 928 N.E.2d 202, 207 (Ind. 2010). "The only relevant characteristic of the programs and services offered . . . were whether they were programs provided on a regular basis for persons less than eighteen years of age." *Id*. The evidence at trial established that the church at issue holds weekly youth meetings for students in junior high school and high school, some as young as fourteen and fifteen years old, on Sundays at 5:00 p.m. for youth choir, followed by a youth-group meeting. The evidence is sufficient to establish that the church was a youth program center.

Sewell also contends that there was insufficient evidence that he knowingly or intentionally resided within the protected zone around the church in violation of the statute.

---

[2] Without making substantive changes, Public Law 114-2012, SEC. 67 recodified Indiana Code section 35-41-1-29.

Sewell emphasizes his testimony and that of Pastor Smith indicating their confusion about the church's status as a youth program center. However, the records establishes that Pastor Smith was confused about the legislature's decision that Sewell could attend church services at the church, but could not reside within 1,000 feet of the church. Sewell acknowledged that he had been repeatedly told that the church was a youth program center. Furthermore, the evidence shows that Sewell was repeatedly warned that residing at the proposed address, which was within 1,000 feet of the church, would be in violation of the law. We conclude that the evidence is sufficient to prove that Sewell chose to reside at the proposed address while knowing that it was within 1,000 feet of a youth program center.

Sewell also argues that he was not "properly determined to be an 'offender against children' as his conviction was entered in 2001." *Appellant's Br.* at 7. As for Sewell's claim that the determination is not supported by sufficient evidence, we conclude that it was. Sewell acknowledges that he was convicted of Class C felony child molesting. Child molesting is one of the offenses enumerated in the statute defining an offender against children. *See* Ind. Code §35-42-4-11. There was sufficient evidence to support the determination of his status.

In addition, Sewell argues that the statute as applied to him violates the *ex post facto* prohibition of both the state and federal constitutions. The United States Constitution proves that "[n]o State shall . . . pass any . . . ex post facto Law." U.S. Const. art. I, § 10. The Indiana Constitution provides that "[n]o ex post facto law . . . shall ever be passed." Ind.

8

Const. art. I, § 24. The state and federal ex post facto prohibitions "forbid[] the Congress and the States to enact any law 'which imposes a punishment for an act which was not punishable at the time it was committed; or imposes additional punishment to that then prescribed.'" *Weaver v. Graham*, 450 U.S. 24, 28 (1981) (quoting *Cummings v. Missouri*, 71 U.S. (4 Wall.) 277, 325-26 (1867)) (footnote omitted). "The underlying purpose of the Ex Post Fact Clause is to give effect to the fundamental principle that persons have a right to fair warning of that conduct which will give rise to criminal penalties." *Wallace v. State*, 905 N.E.2d 371, 377 (Ind. 2009) (citing *Armstrong v. State*, 848 N.E.2d 1088, 1093 (Ind. 2006)).

"Generally, a challenge to the constitutionality of a criminal statute must be raised by a motion to dismiss prior to trial, and the failure to do so waives the issue on appeal." *Adams v. State*, 804 N.E.2d 1169, 1172 (Ind. Ct. App. 2004). Here, Sewell failed to file a motion to dismiss prior to trial and has waived his challenge to the constitutionality of the statute.

We reiterate our warning to defendants that cases in which we have addressed the merits of the challenge notwithstanding the waiver, should not be viewed as an "invitation to neglect to file a motion to dismiss and then argue for the first time on appeal that the statute is unconstitutional." *Price v. State*, 911 N.E.2d 716, 719 n.2 (Ind. Ct. App. 2009). Waiver notwithstanding, we address Sewell's constitutional challenge to the statute.

Indiana Code section 35-42-4-11 provides in pertinent part as follows:

(a) As used in this section, and except as provided in subsection (d), "offender against children" means a person required to register as a sex or violent offender under IC 11-8-8 who has been:

. . . .

9

(2) convicted of one (1) or more of the following offenses:

    (A) Child molesting (IC 35-42-4-3).

. . . .

A person is an offender against children by operation of law if the person meets the conditions described in subdivision (1) or (2) at any time.

. . . . .

Sewell contends that since his conviction for child molesting was entered in 2001 for acts that took place in 2000, application of a statute taking effect in 2006, constitutes a violation of state and federal ex post facto prohibitions and thus, his conviction should be reversed. Sewell relies heavily on our Supreme Court's opinion in *State v. Pollard*, 908 N.E.2d 1145 (Ind. 2009) in support of his position. He contends that the decision in *Pollard* stands for the proposition that anyone convicted of an offense listed in Indiana Code section 35-42-4-11 before July 1, 2006, the effective date of the statute, is not subject to its provisions. We disagree with Sewell's broad interpretation of the holding in *Pollard*.

In *Pollard*, the defendant, who had an ownership interest in property within the protected zone for twenty years, and resided there before and after the enactment of the residency offense statute, was charged with violating the statute. The defendant had been convicted of a sex-related offense in 1997 and was charged with violating the residency offense statute in early 2007. Pollard filed a motion to dismiss the charge prior to trial, contending that the statute as applied to him violated ex post facto prohibitions. The trial court agreed and granted Pollard's motion to dismiss.

10

After a panel of this court affirmed the trial court on different grounds, the Supreme Court granted transfer and affirmed the trial court's dismissal on the basis that as applied to Pollard, the statute violated ex post facto prohibitions. 908 N.E.2d at 1154. Nothing about Pollard's conduct had changed, but the application of the law made previously legal conduct, illegal. The Supreme Court found an ex post facto law violation in Pollard's case because it affects "one's freedom to live on one's own property" and would subject a sex offender to "constant eviction because there is no way for him . . . to find a permanent home in that there are no guarantees a school or youth program center will not open within 1,000 feet of any given location." *Id*. at 1150. The Supreme Court explicitly held that "as applied to Pollard, the statute violates the prohibition on ex post facto laws. . . ." *Id*. at 1154.

The prohibition against *ex post facto* laws applies only when a new law "'imposes a punishment for an act which was not punishable at the time it was committed; or imposes additional punishment to that then prescribed.'" *Id.* at 1149 (quoting *Weaver*, 450 U.S. at 28)). The fact that an element of a crime "'draws upon antecedent facts'" does not make Indiana Code section 35-42-4-11 an *ex post facto* law. *United States v. Hemmings*, 258 F.3d 587, 594 (7th Cir. 2001) (quoting *Cox v. Hart*, 260 U.S. 427, 435 (1922)). "The critical question in evaluating an *ex post facto* claim 'is whether the law changes the legal consequences of acts completed before its effective date.'" *United States v. Brady*, 26 F.3d 282, 291 (2nd Cir. 1994) (quoting *Weaver*, 450 U.S. at 31).

In the present case, Sewell did not reside or own property within 1,000 feet of the church when he was convicted of child molesting. Nor has he shown that he resided in

11

property which only later fell within a protected zone due to the establishment of a school or youth program center. Here, the law punishes the decision by Sewell, an offender against children, to take up residence within 1,000 feet of an existing youth program center. We conclude that because Sewell's residency decision occurred after the enactment of the statute, Sewell's prosecution does not violate state or federal *ex post facto* provisions.

Affirmed.

NAJAM, J., and MAY, J., concur.