**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**

ATTORNEY FOR APPELLANT:

**MARY SPEARS**
Gilroy Kammen Maryan & Moudy
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**BRIAN REITZ**
Deputy Attorney General
Indianapolis, Indiana



FILED
Nov 13 2012, 9:38 am

CLERK
of the supreme court,
court of appeals and
tax court

# IN THE
# COURT OF APPEALS OF INDIANA

KEVIN PERRY,                                  )
                                              )
    Appellant-Defendant,              )
                                              )
        vs.                        )    No. 49A02-1204-CR-265
                                              )
STATE OF INDIANA,                             )
                                              )
    Appellee-Plaintiff.               )

APPEAL FROM THE MARION SUPERIOR COURT
The Honorable Stanley Kroh, Commissioner
Cause No. 49G03-1107-FB-048074

**November 13, 2012**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**ROBB, Chief Judge**

## Case Summary and Issues

Kevin Perry was convicted of robbery and unlawful possession of a firearm by a serious violent felon, both Class B felonies, and escape, a Class C felony. He raises three issues for our review, which we restate as: 1) whether Detective Perkins's opinion that Perry possessed a two-shot Derringer was properly admitted into evidence; 2) whether the evidence is sufficient to support his convictions for robbery and unlawful possession of a firearm by a serious violent felon; and 3) whether the State's closing argument created fundamental error. Concluding Detective Perkins's opinion was properly admitted as that of a skilled witness, the evidence is sufficient to support Perry's convictions, and the State's closing argument did not create fundamental error, we affirm.

## Facts and Procedural History

A few days after Brenai Baxter met a man named Calvin, Calvin called her and invited her to a barbeque on the Fourth of July at his sister's house. Baxter accepted, and she and her son, who was five years old, picked up Calvin in Baxter's vehicle and proceeded to where Calvin said his sister lived. While en route, Calvin commented on Baxter's son's sandals and asked if he could purchase them, and Baxter said that he could. When they arrived at their destination, Calvin got out and went inside the home while Baxter and her son stayed in her vehicle. Calvin returned with another man, Perry. Perry walked to the driver's side door and asked Baxter if he could see her son's sandals. After reaching into the backseat, Baxter turned around and found Perry pointing a gun in her face. She then saw Calvin also holding a gun and pointing it at her son. Perry demanded Baxter give him her money, and he eventually took it from her person. Perry and Calvin then ran away.

2

After Baxter called 911, Officer Ronnie Kwiatkowski arrived and began looking for the suspects while driving his police car. He noticed a man matching the description given by Baxter, and as soon as the suspect saw Officer Kwiatkowski, the suspect ran and Officer Kwiatkowski lost track of him. He then saw Perry sitting on the porch of a house, stopped his vehicle and jumped out, and said, "Stop. Police." Transcript at 52. Perry began to walk inside the house, but he stopped after taking a couple steps. Officer Kwiatkowski eventually placed him in handcuffs. Sergeant Paul McDonald arrived and placed Perry in the back of his vehicle. The officers were waiting for a "prisoner wagon" to transport Perry to jail, when suddenly Perry jumped out of Sergeant McDonald's vehicle and fled. Perry was later apprehended.

Baxter described the gun Perry used as having "two holes and a beam, like a laser, on top of it." Id. at 88. Detective Peter Perkins testified that based on Baxter's description, the gun was likely a "two-shot Derringer" because "it was small, two barrels" and "[s]he said it was stacked on top of each other." Id. at 169. Perry objected and moved to strike Detective Perkins's testimony, arguing the State did not establish Detective Perkins as a firearms expert. The trial court overruled the objection and denied Perry's motion.

After the State presented its case, Perry moved for a directed verdict as to his firearm charge, contending insufficient evidence was presented that the weapon was actually a firearm. The trial court denied the motion. During the State's closing argument, while discussing Perry's escape from the back of Sergeant McDonald's police vehicle, the State said:

3

But the evidence on that case doesn't just stop there. That evidence also shows you something about the robbery. Here is the law regarding that: A jury may infer guilt based upon attempted flight since such conduct often shows consciousness of guilt. That's the Indiana State Supreme Court saying that. You can infer guilt by flight because it shows consciousness of guilt.

What does that mean? An innocent person doesn't try to escape from the police. If he hasn't done anything wrong that day, he has no reason to run. If he has, he's got plenty of reasons to run; right?

Id. at 251. Perry did not object to the State's closing argument. Perry now appeals.

Additional facts will be supplied as necessary.

## Discussion and Decision

### I. Admission of Evidence

#### A. Standard of Review

The admission of evidence is within the sound discretion of the trial court, and we will reverse the trial court's decision only upon an abuse of that discretion. Rogers v. State, 897 N.E.2d 955, 959 (Ind. Ct. App. 2008) (citation omitted), trans. denied. Abuse of discretion occurs if the trial court's decision is clearly against the logic and effect of the facts and circumstances before the court, or if the court has misinterpreted the law. Id. However, even if a trial court abuses its discretion by admitting evidence, we will only reverse if the error is inconsistent with substantial justice or if a substantial right of the party is affected. Payne v. State, 854 N.E.2d 7, 17 (Ind. Ct. App. 2006) (quotations and citation omitted). Further, "[a]ny error caused by the admission of evidence is harmless error for which we will not reverse a conviction if the erroneously admitted evidence was cumulative of other evidence appropriately admitted." Id.

#### B. Detective Perkins's Testimony

4

Perry argues the trial court abused its discretion by admitting Detective Perkins's testimony regarding the type of gun Perry pointed at Baxter because the State did not sufficiently establish that Detective Perkins is a firearms expert. The State does not contend that it qualified Detective Perkins as an expert, but rather, that he qualified as a skilled witness. Indiana Rule of Evidence 701 provides:

> If the witness is not testifying as an expert, the witness's testimony in the form of opinions or inferences is limited to those opinions or inferences which are (a) rationally based on the perception of the witness and (b) helpful to a clear understanding of the witness's testimony or the determination of a fact in issue.

Skilled witnesses are people "with a degree of knowledge short of that sufficient to be declared an expert under Evid. R. 702, but somewhat beyond that possessed by the ordinary jurors." Linton v. Davis, 887 N.E.2d 960, 975 (Ind. Ct. App. 2008) (quotation omitted), trans. denied. "Skilled witnesses not only can testify about their observations, they can also testify to opinions or inferences that are based solely on facts within their own personal knowledge." Id.

The State argues it qualified Detective Perkins as a skilled witness by establishing that he had been a police officer for twenty-two years and a detective for fifteen years; he is assigned to the homicide, aggravated assault, and robbery unit; he is required to go to a shooting range twice a year and has dealt with many firearms; and part of his training has included being informed of different types of weapons, including revolvers, semi-automatic weapons, and assault rifles.

We conclude Detective Perkins's testimony was properly admitted as that of a skilled witness. The State demonstrated Detective Perkins possessed specialized knowledge of firearms. Based upon Detective Perkins's perception of Baxter's

5

description of the gun, he offered his opinion as to what type of gun Baxter described, and his testimony was helpful in determining exactly what type of weapon Perry used to rob Baxter.

## II. Sufficiency of the Evidence

### A. Standard of Review

Our standard of review for sufficiency claims is well settled. When reviewing a claim of insufficient evidence, we do not reweigh the evidence or judge the credibility of witnesses. Sewell v. State, 973 N.E.2d 96, 100 (Ind. Ct. App. 2012). We will consider only the evidence most favorable to the judgment and the reasonable inferences drawn therefrom. Id. We will affirm the challenged conviction if the evidence and the reasonable inferences constitute substantial evidence of probative value to support the conviction. Id.

### B. Perry's Unlawful Possession of a Firearm and Robbery Convictions

Perry argues the evidence insufficiently demonstrates that he possessed a firearm and used a handgun or firearm to commit robbery.[1] A firearm is defined as a weapon "capable of expelling", "designed to expel", or "that may readily be converted to expel" a projectile by means of explosion. Ind. Code § 35-47-1-5. Perry contends the State only presented evidence "that he held a weapon that had the appearance of a gun" and "the State did not present proof beyond a reasonable doubt that the object Mr. Perry held

---

[1] See Ind. Code § 35-42-5-1 (Class B felony robbery occurs when someone "knowingly or intentionally takes property from another person . . . while armed with a deadly weapon . . . ."). Perry's charging information specified he was charged with robbery for robbing Baxter while armed with "a handgun or guns." Appellant's Appendix at 36-37. Indiana Code section 35-47-1-6 limits the definition of "handgun" to two specific types of firearms. Thus, despite the fact that Indiana Code section 35-42-5-1 only requires a defendant use a deadly weapon to commit robbery as a Class B felony, Perry argues it was necessary that the finder of fact conclude Perry used a firearm because the charging information alleges he possessed "a handgun or guns," and a handgun is, by definition, a firearm. Because we conclude that even this higher evidentiary burden was met by the State, we need not resolve this issue.

6

actually was a firearm rather than a pellet or toy gun not capable of firing or designed to fire items by means of explosions." Brief of the Appellant at 12-13.

Indiana Code section 35-47-4-5 provides "[a] serious violent felon who knowingly or intentionally possesses a firearm commits unlawful possession of a firearm by a serious violent felon, a Class B felony." Perry does not contend he was not a serious violent felon, only that the evidence did not demonstrate he possessed a firearm. However, a conviction may rest on circumstantial evidence alone, and the circumstantial evidence need not overcome every reasonable hypothesis of innocence. Peters v. State, 959 N.E.2d 347, 355 (Ind. Ct. App. 2011). It is sufficient if an inference drawn from the circumstantial evidence reasonably tends to support the conviction. Id.

Here, Baxter testified that Perry held her at gunpoint and demanded she give him her money. This testimony could reasonably be inferred to mean that Perry possessed a firearm and pointed it at her while demanding she give him money. Further, based upon Baxter's description of the gun, Detective Perkins concluded the gun was likely a two-shot Derringer. Even if Perry had presented evidence attempting to demonstrate that the gun was not a firearm, which he did not, it would be up to the finder of fact to weigh such competing evidence. We will not reweigh the evidence or judge the credibility of witnesses on appeal. The testimonies of Baxter and Detective Perkins are substantial evidence of probative value supporting a finding that Perry possessed a firearm. Thus, the evidence is sufficient to conclude Perry possessed a firearm and used it to rob Baxter.

Perry points to Miller v. State, 616 N.E.2d 750 (Ind. Ct. App. 1993), for support of his argument that pursuant to Indiana Code section 35-47-1-5, "the State must show that the object fires bullets or some other projectiles; and second, it must prove that the

7

propulsion of those projectiles is accomplished by a controlled explosion." Br. of Appellant at 14. We disagree both with his application of <u>Miller</u> and his interpretation of what is required by Indiana Code section 35-47-1-5. In <u>Miller</u>, the defendant possessed what the victim believed was a handgun, and he pointed it at the victim and ordered the victim to get out of his car. When the defendant was later arrested, however, police found the gun at the defendant's home. It was a pellet gun, which uses a gas chamber to create enough pressure to propel the pellet when someone pulls the trigger, rather than using gunpowder that creates a small explosion that propels a bullet. The defendant was convicted of confinement and criminal recklessness. However, because the evidence "had clearly shown that the gun in question was a pellet gun, not a firearm," 616 N.E.2d at 755-56, we concluded the evidence was insufficient to establish the defendant was armed with a firearm or handgun. Here, however, the gun Perry possessed when he robbed Baxter was not discovered. The only evidence presented pertaining to the gun was the testimony of Baxter and Detective Perkins, which support the conclusion that it was a firearm.

To the extent Perry argues that the State did not sufficiently demonstrate that the gun used gun powder, we disagree. Circumstantial evidence can be sufficient support for a conviction. <u>See</u> <u>Gorman v. State</u>, 968 N.E.2d 845, 850-51 (Ind. Ct. App. 2012) ("[A] victim's testimony that he or she saw the defendant use what was believed or 'figured' to be a gun is, by itself, sufficient proof of the use of a deadly weapon.") (citation omitted), <u>trans. denied</u>. The circumstantial evidence includes the testimony of Baxter that Perry pointed a gun at her and the reasonable inferences drawn therefrom–that Baxter was referring to "gun" in the usual sense of a weapon that uses gun powder and an explosion

to expel bullets; and Detective Perkins's opinion of what type of gun Baxter described. The circumstantial evidence is sufficient to support Perry's convictions that require possession and/or use of a firearm.

### III. Fundamental Error

### A. Standard of Review

Where a defendant fails to object to prosecutorial misconduct at trial, on appeal the defendant must also show that fundamental error occurred. Cooper v. State, 854 N.E.2d 831, 835 (Ind. 2006). If a defendant can establish this narrow exception, he can avoid waiver of an issue. Id. Fundamental error "is error that makes a fair trial impossible or constitutes clearly blatant violations of basic elementary principles of due process" and presents "an undeniable and substantial potential for harm." Id. (quotation omitted).

### B. The State's Closing Argument

Perry argues fundamental error occurred during his trial because the State's closing argument misstated the law regarding evidence of escape. In Banks v. State, our supreme court stated:

> Evidence of Defendant's flight from the scene of the altercation and his subsequent disposition of the weapon was competent evidence of the consciousness of guilt. Also, it is a matter, generally, for the trier of the facts to determine what weight and value should be given to such evidence. Nevertheless, the flight of an accused is a circumstance to be considered against him only in connection with other evidence . . . . We have previously held that flight alone will not support a conviction . . . .

257 Ind. 530, 538-39, 276 N.E.2d 155, 159 (1971) (citations omitted). See also Maxey v. State, 730 N.E.2d 158, 162 (Ind. 2000) ("[E]vidence of flight is relevant as circumstantial evidence of Defendant's consciousness of guilt.") (citations omitted); Justice v. State, 530

9

N.E.2d 295, 297 (Ind. 1988) ("Evidence of breaking and entering, and evidence of flight are not probative [of intent to commit a felony for the offense of burglary] unless tied to some other evidence which is strongly corroborative of the actor's intent."); Coleman v. State, 265 Ind. 357, 361, 354 N.E.2d 232, 235 (1976) (presence at the scene of a crime and subsequent flight "in connection with other circumstances tending to show participation in the crime may be sufficient to sustain a conviction.") (citation omitted); Weinberger v. Boyer, 956 N.E.2d 1095, 1107 (Ind. Ct. App. 2011) ("[A] sudden trip can be characterized as flight and, although standing alone does not raise a presumption of guilt, it is competent to show consciousness of guilt.") (citation omitted), trans. denied; Martin v. State, 157 Ind. App. 380, 384, 300 N.E.2d 128, 131 (1973) ("Evidence of flight, standing alone, cannot serve as an adequate basis for conviction.") (citation omitted).

Perry contends the State erred in its closing argument by suggesting that the jury could find Perry guilty of robbery and possession of a firearm based solely upon his attempt to escape police custody. Regardless of whether the State's closing argument misstated the law on this issue, we conclude it was not fundamental error. Perry's convictions for robbery and possession of a firearm, as discussed above, were sufficiently supported by evidence independent of his attempt to escape. Thus, even if the jury could have misused the State's closing argument regarding the evidence of flight, it did not make a fair trial impossible or cause undeniable harm, and therefore any inaccuracy on the part of the State did not create fundamental error.

Nevertheless, we point out that at a minimum, the accuracy of the State's closing argument pushed the envelope. On the one hand, the State began its remarks on this issue

by saying the evidence of escape "shows you <u>something</u> about the robbery," tr. at 251 (emphasis added), which could be interpreted to indicate that evidence of Perry's attempted escape was not conclusive as to his robbery charge. On the other hand, the State went on to say, "[a] jury may infer guilt based upon attempted flight since such conduct often shows consciousness of guilt. That's the Indiana State Supreme Court saying that. You can infer guilt by flight because it shows consciousness of guilt." <u>Id.</u> As our supreme court stated in <u>Banks,</u> evidence of flight can add to evidence that collectively supports a conviction, but evidence of flight alone cannot support such a conviction. 257 Ind. at 538-39, 276 N.E.2d at 159. The State's recitation of the law does not include this stipulation, but instead seems to imply the opposite: that evidence of flight alone could support a conviction of robbery. Indiana case law does not support this implication.

Conclusion

Detective Perkins's testimony was properly admitted, the evidence is sufficient to support Perry's convictions, and the State's closing argument, even if inaccurate, did not create fundamental error. We therefore affirm.

Affirmed.

BAKER, J. and BRADFORD, J., concur.