## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Apr 16 2020, 9:19 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Scott H. Duerring
South Bend, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Tina L. Mann
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Oscar Orozco,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff*

April 16, 2020

Court of Appeals Case No.
19A-CR-2408

Appeal from the St. Joseph
Superior Court

The Honorable Jeffrey L. Sanford,
Judge

Trial Court Cause No.
71D03-1902-MR-2

**Baker, Judge.**

[1] Oscar Orozco appeals his conviction for Murder.[1] He argues that the evidence is insufficient to disprove his claim of self-defense beyond a reasonable doubt. Finding the evidence sufficient, we affirm.

## Facts

[2] On June 10, 2017, Miguel Rosales and a group of his friends, including Orozco and George Martinez, went to a bar in Mishawaka. At the bar, several groups of friends met up; the gathering included Bennie Bueno and Joe Caballero. After last call at the bar, the large group got up and left, walking out to the parking lot. Once in the parking lot, a fight broke out. "It was a rumble," with everyone fighting, including Orozco. Tr. Vol. III p. 91. At some point, Orozco punched Caballero.

[3] Rosales punched Bueno, knocking him down, and Bueno pulled out a gun. Martinez grabbed the gun, and he and Bueno struggled for possession of the firearm. Rosales and another individual jumped on Bueno and began hitting him. As the struggle continued, Rosales hit Bueno on the head with a beer bottle, knocking him to the ground. The blow caused a huge cut in Bueno's head that bled profusely and caused a hemorrhage around his brain. Rosales continued to "beat[] [Bueno] up" after Bueno fell to the ground. Tr. Vol. II p.

---

[1] Ind. Code § 35-42-3-1.

191.  Martinez was holding the barrel part of the gun, and the gun was going "up and down."  Tr. Vol. IV p. 64.

[4]     At that point, Bueno was no longer fighting.  He was leaned up against the truck with Martinez at his side.  Martinez had two hands on the gun and Rosales had his hands on Bueno's forearms.  Orozco then ran up and shot Bueno five times in the right side of his back and one time underneath his arm on the right side of his body.  Bueno staggered away, bleeding profusely, and fell into his friend's arms and onto the pavement, where he died.  After Orozco shot Bueno, Orozco, Rosales, and Martinez ran to a vehicle, yelling "let's go, get out of here," and drove away.  *Id.* at 30.  The gun was "thrown out," and Orozco and his friends decided to drive back to Chicago and no one talked about what had happened because they "didn't want to know."  *Id.* at 31, 92.

[5]     On February 15, 2019, the State charged Orozco with murder and a firearm enhancement.[2]  Orozco's jury trial began on September 9, 2019, at which he raised a claim that he had acted in self-defense.  The jury found Orozco guilty of murder on September 12, 2019.  Orozco waived his right to have a jury consider the firearm enhancement, and the trial court found him guilty of the enhancement.  On October 11, 2019, the trial court sentenced Orozco to forty-five years, enhanced by five years for the firearm use, for an aggregate sentence of fifty years imprisonment.  Orozco now appeals.

---

[2] It is unclear why there was a lengthy delay between the shooting and the filing of the criminal charges.

# Discussion and Decision

[6] Orozco's sole argument on appeal is that the State did not disprove his claim of self-defense beyond a reasonable doubt. The standard of review for a challenge to the sufficiency of evidence to rebut a claim of self-defense is the same as the standard for any sufficiency of the evidence claim. *Wallace v. State*, 725 N.E.2d 837, 840 (Ind. 2000). Thus, we will neither reweigh the evidence nor assess witness credibility. *Id.* If there is sufficient probative evidence supporting the factfinder's conclusion, then we will affirm. *Id.*

[7] A person is justified in using deadly force against another person if he "reasonably believes that that force is necessary to prevent seriously bodily injury" to himself or a third person. Ind. Code § 35-41-3-2(c). To assert a successful claim of self-defense, a defendant must show that he (1) was in a place he had a right to be; (2) did not provoke, instigate, or participate willingly in the violence; and (3) had a reasonable fear of death or great bodily harm. *McEwen v. State*, 695 N.E.2d 79, 90 (Ind. 1998). When the defense is raised and supported by the evidence, the State bears the burden of negating one of the elements. *Id.* We will reverse a conviction despite a claim of self-defense only if no reasonable person could say that the claim was negated by the State beyond a reasonable doubt. *Taylor v. State*, 710 N.E.2d 921, 924 (Ind. 1999).

[8] The General Assembly has decreed that a person is *not* justified in using force if, among other things, "the person has entered into combat with another person . . . unless the person withdraws from the encounter and communicates

to the other person the intent to do so and the other person nevertheless continues or threatens to continue unlawful action." I.C. § 35-41-3-2(g)(3).

[9] In this case, there was a melee in the parking lot involving many people, including Orozco. Witnesses testified that "everybody just started fighting," tr. vol. II p. 174, "everybody [was] fighting" and it was a "rumble," tr. vol. III p. 91, "[e]verybody was fighting and running around" and no one was trying to stop it, tr. vol. II p. 149, and "once the fight broke out, it was just like a domino effect. Everybody just started fighting," tr. vol. IV p. 68. Orozco was part of the melee and punched Joe Caballero during the fight. Tr. Vol. III p. 150.

[10] In other words, Orozco was not an innocent bystander. He was a willing and active participant. Orozco points out that there is no evidence that he was involved in combat with Bueno, but in the situation of a large melee we do not believe that is a relevant fact. Orozco was part of a large group of people and was, therefore, part of the "everybody" who was fighting. We believe that a reasonable factfinder could have inferred from these circumstances that Orozco was a mutual combatant who had not withdrawn and communicated an intent to do so before he shot Bueno.

[11] Moreover, we also note that before Orozco shot Bueno, Bueno had already stopped fighting. He had been repeatedly punched by Rosales and Martinez. Rosales hit him with a beer bottle and knocked him to the ground, causing a large head wound that was bleeding profusely. The jury heard testimony that this significant head trauma "likely would have caused some type of disability

of the brain function" that would be potentially severe. Tr. Vol. III p. 17. In addition to the large wound caused by the bottle, Bueno also sustained the following injuries before he was shot: a black eye, an abrasion on his back, multiple abrasions on his face, and multiple small lacerations and tearing of the tissue in the back of his head. At the time Orozco shot him, Bueno was on the ground, leaned up against a vehicle. Martinez had control of Bueno's gun and Rosales was holding Bueno's forearms.

[12] A reasonable factfinder could infer from this evidence that it was no longer objectively reasonable for Orozco to believe that Bueno still posed a risk of serious bodily injury to anyone because Bueno was simply too incapacitated by his injuries. Additionally, Orozco shot Bueno five times in the back and once in the side. *See Hood v. State*, 877 N.E.2d 492, 497 (Ind. Ct. App. 2007) ("Firing multiple shots undercuts a claim of self-defense."). Therefore, even if Orozco had been justified in using some level of force, the jury could have reasonably determined that he used excessive force under the circumstances.

[13] Finally, we note that after Orozco shot Bueno, he got in the vehicle with his friends and fled the state, throwing out the gun at some point in the process. *See Banks v. State*, 257 Ind. 530, 538, 276 N.E.2d 155, 159 (1971) (holding that evidence of a defendant's flight from the scene and subsequent disposition of the weapon was competent evidence of consciousness of guilt). In other words, Orozco's own conduct shows that he did not believe he had acted in self-defense. Rather than calling for medical assistance or contacting law enforcement, he fled the state and disposed of the murder weapon. This is

probative evidence from which a reasonable factfinder could have concluded that the murder was not committed in self-defense.

[14] For all these reasons, we find that there is sufficient evidence supporting the jury's conclusion that the State disproved Orozco's claim of self-defense beyond a reasonable doubt.

[15] The judgment of the trial court is affirmed.

Bradford, C.J., and Pyle, J., concur.