Michael LINDSEY, Appellant
(Defendant below),

v.

STATE ·of Indiana, Appellee
(Plaintiff below).

No. 1183S382.

Supreme Court of Indiana.

Nov. 22, 1985.

Douglas D. Seely, Jr., Mishawaka, for appellant (defendant below).

Linley E. Pearson, Atty. Gen., Amy Schaeffer Good, Deputy Atty. Gen., Indianapolis, for appellee (plaintiff below).

SHEPARD, Justice.

This is a direct appeal from a jury conviction of two counts of rape, a class A felony, Ind.Code § 35-42-4-1 (Burns 1985 Repl.). Defendant-appellant, Michael Lindsey, was sentenced to a prison term of thirty years for each count, to be served consecutively.

Appellant raises the following issues on appeal:

(1) Whether appellant's invocation of his right to counsel during his drug arrest precluded custodial interrogation subsequent to his rape arrest one day later;

(2) Whether the trial court erred by reserving a ruling on appellant's motion for a change of venue until after voir dire of the jury;

(3) Whether the trial court improperly sustained the State's objections made while appellant's attorney was cross-examining the State witnesses;

(4) Whether the trial court's decision to permit testimony by an attorney whom appellant consulted prior to his arrest on the instant charge violated appellant's attorney-client privilege;

(5) Whether imposition of consecutive sentences was erroneous.

These are the facts which tend to support the trial court's judgment. The prosecutrix was raped twice during the late evening hours of June 24, 1982, and the early morning hours of June 25, 1982. On the evening of June 24th, this victim had been socializing with several people at Brian Cart's house. During the course of the evening she left with appellant and two others to buy some beer. She drove her car to the liquor store and returned to Cart's house, where appellant and the others remained. The victim left with another friend for a while, leaving her car parked near Cart's house. This friend drove her back to her car around 10:30 p.m. As the victim was starting her car, appellant approached her, held a knife against her throat, and told her to get down onto the floor of the car. Appellant demanded she put on a blue ski mask he had. Appellant drove the car for a while before stopping at a secluded area. He took the victim out of the car, threw her onto the ground, removed her shoes and pants, and tied her hands together with her shoelaces. Appellant raped her, drove her to another place, threw her onto the ground, and raped her again. After appellant ran off, the victim ran to the closest house and called her mother.

After the hospital examination was concluded, Detective Johnson took a statement and assailant description from the victim at the police station. Detective Lambdin also interviewed her, narrowing the list of people she had seen that night to one possible suspect whom the prosecutrix knew only as Mike.

The next night Detective Lambdin received a call and met with an informant who told Lambdin the last name of the

suspect was Lindsey. Lambdin related this information to Johnson and Lieutenant Thomas. Thomas said that he had been working on a case against Lindsey and that they were about to get a warrant for delivery of a controlled substance. Appellant was arrested on the basis of the drug warrant on June 28, 1982. He was released on the morning of June 29th and re-arrested early in the morning on June 30th on the charge of rape. While in custody for this rape charge appellant confessed to the police.

## I.

Appellant first argues the trial court erred by overruling his motion to suppress the written and oral statements and a map made by appellant while he was in custody after his second arrest. When appellant was first transported to the police station on the drug warrant, Lieutenant Thomas read both the warrant and *Miranda* rights to appellant. After the booking procedure, Thomas interrogated appellant, but appellant denied any knowledge regarding the substance of the drug charge. At approximately 9 p.m., Johnson went into the interrogation room to speak with appellant. Before commencing interrogation, Johnson again advised appellant of his *Miranda* rights and secured a waiver of rights from appellant, which was admitted as State's Exhibit 10. Johnson then began questioning appellant about rape cases. Appellant never made an incriminating statement at this time but rather consistently denied any involvement. Appellant refused to sign a search and seizure waiver for his bedroom, but appellant's sister and brother-in-law, with whom he was living, did sign the search and seizure waiver. After the search was completed, Johnson resumed interrogation. At this point appellant stated he did not wish to talk any further until he consulted with an attorney. When appellant invoked his right to counsel Johnson immediately ceased questioning and appellant was returned to his jail cell.

Between 11:30 and 12:00 p.m. Officer Petgen, a juvenile investigator, interrogated appellant. Petgen had been investigating a case of two runaway girls who lived near appellant. During the course of this investigation Petgen learned appellant assisted the runaway girls by showing them a place where they could stay. Before questioning appellant about this runaway investigation, Petgen read appellant his *Miranda* rights, and appellant agreed to talk with Petgen. Appellant denied he assisted the girls in any way. Petgen also discussed the present rape case with appellant, who again denied any involvement. This information was presented at the motion to suppress hearing and was not evidence admitted at trial. At 3:30 a.m. on June 29, 1982, appellant was released from jail on bond.

Later that same day, appellant and his sister consulted first with attorney Brennan and then later with attorney Mehl. Appellant indicated to Brennan that he had been arrested on a drug charge and questioned about a rape case. Brennan did not have time to take appellant's case and referred him to Mehl. Appellant similarly told Mehl the circumstances surrounding his arrest. Appellant testified at trial that he discussed only terms of employment and not the merits of his case with both Brennan and Mehl and that he did not receive any advice from Mehl. Mehl testified that he discussed appellant's rights regarding the drug charge. Mehl also specifically informed appellant that appellant should not give any statements or talk with any police officers without first talking with Mehl. This advice pertained to both the drug charge and the potential rape charge.

Twenty-two hours after appellant's release he was arrested again. On June 30, 1982, at 1:30 a.m., appellant was arrested for the present rape charges. At 9 a.m. on June 30th, Officer Converse's interrogation of appellant culminated in appellant's signed confession and map which are now challenged. Before questioning appellant Converse advised him of his *Miranda* rights, and appellant waived these rights. Appellant told Converse he would not take

a polygraph test but would talk. Appellant then orally confessed to this rape. Subsequently his statement was reduced to typewritten form by Officer Coryne and signed by appellant. Before his statement was reduced to writing, appellant was informed of his *Miranda* rights one more time and he waived these rights again. Appellant's confession was offered into evidence as State's Exhibit 16 without a contemporaneous objection. Appellant also drew a map the police requested which provided directions to the location where the prosecutrix was raped the first time. The map was also admitted into evidence as State's Exhibit 15 without a contemporaneous objection by appellant.

Appellant maintains that the invocation of his right to counsel at his first arrest precludes admission of incriminating statements made at his second arrest. He cites *Edwards v. Arizona* (1981), 451 U.S. 477, 101 S.Ct. 1880, 63 L.Ed.2d 378, for the proposition that once a detainee has asserted his right to consult counsel during an interrogation, the interrogation must cease and the police may not initiate further questioning in the hope that a suspect may be induced to change his mind. While appellant claims he repeatedly requested that police questioning cease until appellant consulted with an attorney, the evidence favorable to the judgment indicates appellant made such a request only to Johnson subsequent to his drug arrest on June 28th. Johnson immediately ceased questioning appellant when he invoked his right to counsel. Petgen did interrogate appellant that same evening, initially about the runaway case and then regarding this rape case. Any statement which appellant made during Petgen's interrogation would therefore be entitled to suppression under *Edwards.*

As for the admissibility of the defendant's confession made after his second arrest, we find *Edwards* to be inapplicable. In *Edwards* the defendant was in continuous custody. When a defendant is arrested, released, and then arrested on a different charge, *Edwards* is not controlling.

■ Whether there has been a valid waiver of the right to remain silent and to consult with counsel depends in each case upon the particular facts and circumstances surrounding the case, including the background, experience, and conduct of the accused. *Kern v. State* (1981), Ind., 426 N.E.2d 385. The evidence here is sufficient to support beyond a reasonable doubt the conclusion that appellant's confession and map were the product of a free will and not induced by any violence, threats, promises, or other improper influences. *Polk v. State* (1984), Ind., 467 N.E.2d 666. The confession and map were properly admitted.

■ In any event, filing a motion to suppress is insufficient to preserve error for appellate review. When the evidence which was sought to be suppressed is later offered at trial a contemporaneous objection is required. *Wagner v. State* (1985), Ind., 474 N.E.2d 476.

### II.

■ Appellant claims the trial court erred by reserving ruling on appellant's motion for a change of venue from the county until after voir dire. Appellant's motion was predicated upon alleged prejudicial pretrial publicity. The trial court reserved ruling on this motion to see whether a fair and impartial jury panel could be selected. Appellant claims this deferral constituted fundamental error and an abdication by the judge to make a factual determination based upon the record presented. We recognize that the procedure followed here by the trial judge is quite commonly employed. This appears to be the first time it has been challenged on appeal.

In *Underhill v. State* (1981), Ind., 428 N.E.2d 759, the trial judge followed this practice in denying the motion for a change of venue. We found that this denial was not an abuse of discretion and noted that "the burden rests with the movant to establish either the high probability or existence of such widespread bias in the community that an impartial jury cannot be ob-

tained." *Underhill,* 428 N.E.2d at 763. In *Underhill,* however, the appellant had challenged the trial court's decision on its merits and we did not analyze the propriety of the procedure which had been used. Appellant asserts that the trial court is required to follow the practice used in *Gillie v. State* (1984), Ind., 465 N.E.2d 1380. Gillie filed two motions for a change of venue from the county, citing pretrial publicity. The trial court held hearings on these motions and denied them. At the close of voir dire, the defendant renewed his motion and the trial judge denied it again. This Court affirmed the denial and said that the trial judge properly considered what he heard during voir dire:

> It is the trial court's role to weigh the evidence of potential community bias and to assess the credibility of the jurors during voir dire examination in determining whether a defendant could receive a fair trial.

*Gillie,* 465 N.E.2d at 1384.

There are some cases where the information in a verified motion for a change of venue or an accompanying affidavit suggests to the trial court that an evidentiary hearing will be helpful in resolving the question long before a jury is convened and the parties assemble for trial. Where the trial judge's review of the information available from the pleadings or from a hearing points toward denial of the motion, postponing a ruling until after voir dire can only aid the party seeking change of venue.

At the heart of the decision on a motion for change of venue is the right to an impartial jury. External evidence may convince the trial court that finding impartial jurors will be so difficult that the motion should be granted. However, where voir dire reveals that the potential jurors are able to set aside preconceived notions of guilt and render a verdict based solely on the evidence, we have held that the motion need not be granted. *Johnson v. State* (1985), Ind., 472 N.E.2d 892; *Drummond v. State* (1984), Ind., 467 N.E.2d 742.

We find the trial court's decision here to postpone a ruling on the motion to be within the discretion assigned to trial judges and will not set aside the jury's verdict on the basis urged by appellant.

### III.

Appellant argues the trial court improperly sustained objections during his cross-examination of State witnesses at trial and at the hearing on the motion to suppress. He claims this curtailment of cross-examination deprived him of a fair trial because the questions would have demonstrated that the police acted improperly in their arrest and interrogation of appellant.

During cross-examination at the suppression hearing, Officer Johnson admitted he conducted an illegal search of appellant's car. After Johnson stated that items removed from appellant's car were never tagged as evidence, defense counsel queried whether conducting an illegal search "didn't bother" him. Johnson responded affirmatively but added he did not get anything from the search. Defense counsel then posed the following hypothetical question: "Supposing you found a murder weapon in the car. Wouldn't that—." The state interrupted with an objection. Defense counsel claims he was trying to demonstrate that Johnson did not care about appellant's constitutional rights.

Converse also testified during the suppression hearing and noted that appellant appeared to be anxious when Converse first saw appellant. The trial court sustained the State's objection when defense counsel asked whether an anxious person was at a disadvantage as far as making a knowing, intelligent, and voluntary act.

The rules regarding cross-examination of witnesses are more relaxed at a suppression hearing because there is no jury present which could be influenced by improper questions or responses. Of course, the trial judge should not base his ruling on the suppression motion upon evidence which is conjectural. To require a witness to answer hypothetical questions based upon facts not established would invite

speculation. The trial court properly sustained the State's objections.

■ The trial court also sustained State's objections to questions posed to Officers Lambdin, Johnson, and Converse during trial. Defense counsel asked Lambdin whether he suggested to Johnson that arresting appellant on the drug charge was an appropriate way to arrange custodial interrogation on this rape case. State's objection was sustained. A few moments later, counsel asked substantially the same question, which was answered by the witness without objection.

Defense counsel also cross-examined Johnson regarding whether one of the rape victims had, on three different occasions, identified another man as her attacker. The State's objection was sustained. Upon further cross-examination Johnson stated this victim once identified a Mr. Martinez as the possible attacker. When questioned whether this victim identified Martinez on another occasion as her attacker, Johnson responded he remembered only one time. Later, when this rape victim was questioned during cross-examination she testified she twice identified a Mr. Martinez as the man who looked like her attacker.

During the cross-examination of Converse, defense counsel asked whether the officer was aware appellant had earlier refused to answer further police questions and requested counsel. Converse responded that no one had so informed him. Defense counsel then questioned whether Converse would have proceeded with his interrogation if he had been so advised. The State's objection was sustained.

■ Appellant claims sustaining these objections rendered less effective his cross-examination of State witnesses. Generally, cross-examination of witnesses should not be unduly limited by the trial judge. However, the trial judge is responsible for managing the proceedings and therefore is imbued with discretion regarding cross-examination. *Marbley v. State* (1984), Ind., 461 N.E.2d 1102. The trial judge's control of cross-examination will be reversed only

upon an abuse of discretion. To show abuse of discretion appellant must demonstrate prejudice in the trial judge's ruling. *Clark v. State* (1985), Ind., 480 N.E.2d 555. Generally, the questions cited here were either improper hypotheticals or were essentially answered during the trial, and we are unable to find that appellant suffered any prejudice as a result of the trial court disallowing them.

### IV.

■ Appellant argues the trial court violated his attorney-client privilege by directing attorney Mehl to testify.

After appellant was released from custody on his drug arrest, he sought to employ an attorney. Appellant met with attorneys Brennan and Mehl but did not have sufficient funds to employ either attorney at that time. During the trial appellant testified he discussed only the terms of employment with these attorneys and did not receive advice or discuss the merits of his case. The State subpoenaed Mehl, who unsuccessfully moved to quash the subpoena. Appellant's voluntary testimony about his recollections of the confidential communications he made to Mehl waived any attorney-client privilege which may have existed. Such an act is deemed to be a consent for the attorney to testify to the same communication. *Fluty v. State* (1947), 224 Ind. 652, 71 N.E.2d 565. The trial court did not err by ordering Mehl to answer only those questions specifically related to the scope of appellant's testimony.

### V.

■ Appellant argues the imposition of consecutive sentences was erroneous because the trial court specifically stated there were no statutory aggravating circumstances. He contends the proper remedy is to order the sentences be served concurrently.

Appellant has misinterpreted the sentencing record. At the sentencing hearing the trial judge stated the following:

THE COURT: Mr. Lindsey, it's the Court's feeling that the Court should

sentence you on the conviction that you suffered under this cause number, 8305, and not sentence you at this time for the other alleged rapes.

Even though two of the victims testified in the trial, you've not been convicted of those rapes. And I don't think it's appropriate that the Court should sentence you with those in mind at this point in time.

I don't find any statutory aggravating circumstances to increase the sentence from the standard 30 years to the maximum of 50 years.

I think the legislature, when they indicated that if you use a weapon, that that raises it from a B Felony to an A Felony, took that into consideration in that.

There are, however, two separate and distinct incidences of rape in this cause of action. I'm going to sentence you to the Department of Correction for 60 years; 30 years under Count I and 30 years under Count II. I will give you the 198 days good time credit that you have coming to you.

Enhancement of the presumptive sentence and imposition of consecutive sentences are both dependent upon the same statutory aggravating circumstances. Ind. Code § 35–38–1–7(b) (Burns 1985 Repl.). In either case the trial judge must specifically state the reasons which warrant sentence enhancement or consecutive sentences. In any event, sentence enhancement is a separate and discrete decision from the imposition of consecutive sentences.

■ In this case the trial judge's statement, "I don't find any statutory aggravating circumstances ..." was in reference to sentence enhancement. Consequently, the trial court did not enhance appellant's sentence by an additional twenty years allowed by Ind.Code § 35–50–2–4 (Burns 1985 Repl.) but rather imposed the presumptive terms of thirty years. A specific and individualized statement of reasons is not required when the presumptive term is imposed. *Johnson v. State* (1983), Ind., 455 N.E.2d 932.

■ When consecutive sentences are imposed the court must state specific and individualized reasons for so doing. *Rust v. State* (1985), Ind., 477 N.E.2d 262; *Brown v. State* (1982), Ind., 442 N.E.2d 1109. Here, the only basis in the record to support the court's imposition of consecutive sentences is there were "two separate and distinct incidences of rape." This offered justification does not satisfy the specificity requirement.

■ Where the trial court does not give a sufficient statement of reasons for imposing consecutive sentences the proper remedy is to remand the cause with instructions that the trial court either enter any findings which support the consecutive sentences, or, alternatively, resentence appellant to concurrent terms. *Pillow v. State* (1985), Ind., 479 N.E.2d 1301. We so order.

The cause is remanded for correction of sentence consistent with this opinion. In all other respects, the judgment is affirmed.

GIVAN, C.J., and DeBRULER, PRENTICE and PIVARNIK, JJ., concur.