## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

May 29 2020, 10:44 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

| ATTORNEY FOR APPELLANT | ATTORNEY FOR APPELLEE |
|---|---|
| Denise L. Turner | Tina L. Mann |
| Indianapolis, Indiana | Deputy Attorney General |
| | Indianapolis, Indiana |

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Justin Scruggs, | May 29, 2020 |
| *Appellant-Defendant,* | Court of Appeals Case No. 19A-CR-2409 |
| v. | Appeal from the Madison Circuit Court |
| State of Indiana, | The Honorable Angela Warner Sims, Judge |
| *Appellee-Plaintiff.* | Trial Court Cause No. 48C01-1605-FA-1040 |

**Riley, Judge.**

# STATEMENT OF THE CASE

Appellant-Defendant, Justin Scruggs (Scruggs), appeals the sentence imposed by the trial court following his conviction for child molesting, a Class A felony, Ind. Code § 35-42-4-3(a)(1) (2007); two Counts of child molesting, Level 1 felonies, I.C. § 35-42-4-3(a)(1); and child molesting, a Class C felony, I.C. § 35-42-4-3(b) (2007).

We affirm.

# ISSUES

Scruggs presents the court with two issues, which we restate as the following:

> (1) Whether the trial court abused its discretion when it imposed consecutive sentences; and

> (2) Whether his sentence is inappropriate in light of the nature of his offenses and his character.

# FACTS AND PROCEDURAL HISTORY

T.S. was born in August 2006, and her older brother, Z.E., was born in September 2005. In 2011, T.S. and Z.E.'s father (Father) could not provide adequate care for them. Father entered into an agreement with the children's paternal great-aunt, Christine Rinker (Rinker), granting temporary guardianship of the children to Rinker. In 2012, Rinker relocated from South Dakota to Anderson, Indiana. From March 2012 to March 2016, Rinker, T.S., and Z.E. lived in several homes in Anderson. Rinker's son, Scruggs, also lived with

Rinker, T.S., and Z.E. Scruggs has a mild learning disability and has received SSI since he was four years old. Scruggs has an IQ of 85, which is slightly less than average intelligence. Scruggs does not qualify as mentally retarded, which is indicated by an IQ of 70 or less. Scruggs graduated from high school in South Dakota.

[5] Soon after their move to Indiana, Scruggs began molesting T.S. The molestation was so frequent that T.S. could not remember how many times it had occurred. The first time Scruggs molested her, T.S. had just turned six years old, and Scruggs was twenty-two years old. He, T.S., and Z.E. were passengers in the backseat of a car on the way home from T.S.'s birthday party. T.S. was tired from the party and was falling asleep. Scruggs grabbed and squeezed T.S.'s vagina outside of her clothing, which caused her pain. Over the next three years, Scruggs touched T.S.'s chest and vagina above and below her clothing on at least ten occasions. On at least one occasion, Scruggs inserted his fingers inside T.S.'s vagina.

[6] Scruggs also began having sexual intercourse with T.S. when she was six years old. On one occasion, Rinker, Scruggs, T.S., and Z.E. watched a movie together. Rinker fell asleep. Scruggs picked up T.S. and carried her to the laundry room of the home. T.S. called out to Z.E., who tried to follow them to the laundry room. Scruggs told Z.E. to go away. In the laundry room, Scruggs subjected T.S. to sexual intercourse until he ejaculated. Rinker walked into the laundry room and saw Scruggs on top of T.S. Rinker slapped Scruggs, told him to stop what he was doing, and told T.S. to stay away from Scruggs. Rinker did

not report what she had seen to the authorities. Scruggs subjected T.S. to sexual intercourse on at least ten occasions during the period when she was six through eight years old. During these years, T.S. suffered from recurring yeast and urinary tract infections. At times she experienced painful urination and blood in her urine. T.S. told Rinker several times about what Scruggs was doing to her, but Rinker did not believe T.S.

[7] In March 2016, Father retrieved T.S. and Z.E. from Rinker's care in order to take them back to his home in South Dakota. During the trip to South Dakota, T.S. told Father what Scruggs had done. Father reported the offenses to the police in South Dakota, who, in turn, alerted the Madison County Sheriff's Department. T.S. and Z.E. were forensically interviewed in South Dakota. T.S. reported the offenses during the interview and stated that when Scruggs subjected her to sexual intercourse, it felt like "somebody was like just hitting me constantly in my private." (Exh. Vol., p. 43). T.S. and Z.E. also reported physical abuse by Rinker. Investigators attempted to speak with Rinker, but she declined to meet with them. Rinker also refused to allow investigators to speak with Scruggs.

[8] On May 20, 2016, the State filed an Information, charging Scruggs with Class A felony child molesting by sexual intercourse or deviate sexual conduct, Level 1 felony child molesting by sexual intercourse, Level 1 felony child molesting by digital penetration, and Class C felony child molesting by fondling. Scruggs was evaluated by two court-appointed physicians charged with rendering their opinion regarding Scruggs's mental fitness to stand trial. Both physicians

concluded that Scruggs did not suffer from a mental defect and that, at the time of the offenses, he was capable of appreciating the wrongfulness of his conduct.

[9] On August 14, 2019, the trial court convened Scruggs's three-day jury trial. T.S. testified at trial, and her forensic interview was admitted into evidence. During his testimony, Father related that T.S. and Z.E. had been in therapy for two years after the offenses and that Z.E. still suffered from night terrors as the result of things that he had seen. At the conclusion of the evidence, the jury found Scruggs guilty as charged.

[10] On October 2, 2019, the Madison County Probation Department filed its presentence investigation report which provided the following facts. Scruggs had no criminal history prior to the instant offenses. Scruggs worked for two years as a janitor, and he reported doing sporadic, part-time farm work prior to his arrest for the instant offenses. The victim impact statement appended to the report indicated that T.S. suffered from anxiety, depression, fear of strangers, and a desire to isolate as a result of the offenses. The Probation Department recommended that Scruggs receive an aggregate sentence of sixty-two years.

[11] The trial court held Scruggs's sentencing hearings on October 1 and October 4, 2019. The trial court found as aggravating circumstances that Scruggs was in a position of trust, care and control over T.S. and that T.S. was of the tender years of six through eight years old when Scruggs committed the offenses. The trial court recognized Scruggs's lack of criminal history and his mental health as mitigating circumstances. The trial court found that there was

significant mitigation that would outweigh that of aggravation to warrant a sentence that [is] below the advisory sentence in this case. The [c]ourt does though further find with respect to concurrent and/or consecutive sentence that this was multiple acts that occurred over a period of time to this child. And in—as a result of that, the [c]ourt does find that consecutive sentences at least to a couple of the counts is warranted and appropriate.

(Transcript Vol. IV, pp. 23-24). The trial court sentenced Scruggs to twenty-five years for each of his Class A and Level 1 felony child molesting convictions and to three years for his Class C felony child molesting conviction. The trial court ordered Scruggs to serve his Class A felony and one of his Level 1 felony sentences consecutively, with all other sentences to be served concurrently, for an aggregate sentence of fifty years.

[12] Scruggs now appeals. Additional facts will be provided as necessary.

# DISCUSSION AND DECISION

## I. *Abuse of Discretion*

[13] Scruggs contends that the trial court abused its discretion when it imposed consecutive sentences for his Class A felony conviction and one of his Level 1 felony convictions. So long as a sentence imposed by a trial court is within the statutory range for the offense, it is subject to review only for an abuse of discretion. *Anglemyer v. State*, 868 N.E.2d 482, 490 (Ind. 2007), *clarified on reh'g*, 875 N.E.2d 218 (Ind. 2007). An abuse of the trial court's sentencing discretion occurs if its decision is clearly against the logic and effect of the facts and circumstances before the court, or the reasonable, probable, and actual

deductions to be drawn therefrom. 868 N.E.2d at 490. A trial court abuses its discretion when it fails to enter a sentencing statement at all, its stated reasons for imposing sentence are not supported by the record, its sentencing statement omits reasons that are clearly supported by the record and advanced for consideration, or its reasons for imposing sentence are improper as a matter of law. *Id*. at 490-91.

[14] Scruggs argues that the trial court's statement of its reason for imposing consecutive sentences was not sufficiently specific. We agree with Scruggs's general proposition that a trial court abuses its discretion when it does not enter a sufficiently specific sentencing statement. *See id.* at 491 ("The trial court must enter a statement including reasonably detailed reasons or circumstances for imposing a particular sentence."). However, we disagree with Scruggs that *Lindsey v. State*, 485 N.E.2d 102 (Ind. 1985), supports his argument that the trial court's sentencing statement failed the specificity requirement. Lindsey raped the same victim twice over the course of a few hours and was later convicted of two counts of rape as Class A felonies. *Id*. at 103. At sentencing, the trial court found no aggravating circumstances justifying the imposition of enhanced sentences, and it imposed the presumptive sentence of thirty years for each Class A felony. *Id*. at 103, 108. The trial court ordered these sentences to be served consecutively, stating as its rationale that there "were two separate and distinct incidences of rape." *Id*. at 108. Our supreme court found this to be an abuse of the trial court's discretion, concisely explaining that "[t]his offered justification does not satisfy the specificity requirement." *Id*.

[15]     Here, the trial court did not simply state that separate offenses had occurred. Rather, it reasoned that Scruggs had subjected T.S. to "multiple acts that occurred over a period of time[.]" (Tr. Vol. IV, p. 24). This statement entailed consideration of the relatively numerous offenses Scruggs perpetrated on T.S. and that those offenses were spread out over time, as opposed to being the result of one instance of lapsed judgment. We conclude that the trial court's stated reason for imposing consecutive sentences here was sufficiently specific to distinguish it from the bare-boned recitation at issue in *Lindsey*.

[16]     Although the argument is not well-developed, inasmuch as Scruggs contends that the trial court abused its discretion by imposing consecutive sentences after it found that the mitigators outweighed the aggravators for purposes of enhancing his individual sentences, we find that argument to be misplaced. After the General Assembly adopted our present advisory sentencing scheme in 2005, a trial court is no longer obligated to identify and weigh the aggravating and mitigating circumstances upon rendering its sentence. *Anglemyer*, 868 N.E.2d at 491. Rather, it may impose any sentence authorized by law once it has entered its sentencing statement. *Id.*; *see also* I.C. § 35-38-1-7.1(d). As a result, the relative weight ascribed by the trial court to any aggravating and mitigating circumstances is no longer subject to our review. *Anglemyer*, 868 N.E.2d at 491. Scruggs's argument is based on the inaccurate assumption that the trial court was obligated to find that the aggravators outweighed the mitigators in order to impose consecutive sentences. Even if it were so obligated, crediting Scruggs's argument would entail our consideration of the

weight the trial court ascribed to its reason for imposing consecutive sentences, something we are no longer able to do as part of our review. *Id*. Accordingly, we conclude that the trial court did not abuse its discretion when it imposed consecutive sentences here.

## II. *Appropriateness of Consecutive Sentences*

Scruggs also argues that his fifty-year sentence is inappropriately harsh and asks that we order his individual, twenty-five-year sentences to be served concurrently rather than consecutively. "Even when a trial court imposes a sentence within its discretion, the Indiana Constitution authorizes independent appellate review and revision of this sentencing decision." *Hoak v. State*, 113 N.E.3d 1209, 1209 (Ind. 2019). Thus, we may revise a sentence if, after due consideration of the trial court's decision, we find that the sentence is inappropriate in light of the nature of the offenses and the character of the offender. *Id*. The principal role of such review is to attempt to leaven the outliers. *Cardwell v. State*, 895 N.E.2d 1219, 1225 (Ind. 2008). The defendant bears the burden to persuade the reviewing court that the sentence imposed is inappropriate. *Robinson v. State*, 91 N.E.3d 574, 577 (Ind. 2018).

### A. *Nature of the Offenses*

When assessing the nature of an offense, the advisory sentence is the starting point that the legislature selected as an appropriate sentence for the particular crime committed. *Perry v. State*, 78 N.E.3d 1, 13 (Ind. Ct. App. 2017). Scruggs was convicted of one Class A felony and two Level 1 felonies, all of which have an advisory sentence of thirty years and a maximum sentence of fifty years.

I.C. § 35-50-2-5(a),(b). Scruggs was also convicted of Class C felony child molesting, which has an advisory sentence of four years and a maximum sentence of eight years. I.C. § 35-50-2-5(c). Therefore, Scruggs faced a potential sentence of ninety-eight years. The trial court sentenced Scruggs to twenty-five years for his Class A and Level 1 felony convictions and to three years for his Class C felony conviction. The trial court ordered Scruggs to serve his Class A felony sentence and one of his Level 1 felony sentences consecutively. Thus, the trial court imposed mitigated sentences and only imposed one consecutive sentence.

[19] When reviewing the nature of the offense, we look to "the details and circumstances of the commission of the offense and the defendant's participation." *Perry*, 78 N.E.3d at 13. Scruggs was T.S.'s cousin who lived in her household and who occupied a position of trust with T.S., something Scruggs does not dispute on appeal. Scruggs used this access to T.S. to molest T.S. so frequently that she lost count of how many times it occurred. T.S. was extremely young, only six years old, when Scruggs began subjecting her to fondling and full-scale sexual intercourse. Scruggs's molestation was ongoing over the course of almost three years and only ceased when Father took T.S. out of Scruggs's proximity. Scruggs was not even deterred after being caught by Rinker in the act of molesting T.S. Some of the offenses occurred in Z.E.'s presence as well. T.S. has suffered anxiety, depression, and a desire to self-isolate, and she and Z.E. were in counseling for two years to attempt to heal.

Given these circumstances, we find nothing inappropriate about the fifty-year sentence imposed by the trial court.

[20] Scruggs argues that his aggregate sentence is inappropriate given the nature of his offenses, which he acknowledges were "serious and warrant significant punishment[.]" (Appellant's Br. p. 10). Scruggs likens his case to four cases in which consecutive sentences for child molesting offenses were found to be inappropriate, *Laster v. State*, 918 N.E.2d 428 (Ind. Ct. App. 2009); *Rivers v. State*, 915 N.E.2d 141 (Ind. 2009); *Harris v. State*, 897 N.E.2d 927 (Ind. 2008); and *Monroe v. State*, 886 N.E.2d 578 (Ind. 2008). Scruggs cites these cases because each involved some circumstances present in his case, including exploitation of a position of trust, one victim, molestation occurring over an extended period, and the absence of excessive force.

[21] However, we find the recent case of *Faith v. State*, 131 N.E.3d 158 (Ind. 2019), to be more instructive. Faith was in a position of trust over his twelve-year-old victim as her teacher. *Id*. at 159. Faith subjected his victim to sexual intercourse, digital penetration, and oral sex on countless occasions. Faith was ultimately charged with thirty-six counts of child molesting, pleaded guilty to three Counts of Class A felony child molesting, and was sentenced to consecutive thirty-year terms. This court revised his sentence to concurrent thirty-year terms. On petition for transfer, our supreme court held that concurrent advisory terms were "wholly inadequate" for Faith's offenses. The court noted that two cases cited by Faith, *Harris v. State*, 897 N.E.2d 927 (Ind. 2008), and *Monroe v. State*, 886 N.E.2d 578 (Ind. 2008), did not support his

argument that sentence revision was necessary because he only inflicted his multiple offenses on one victim, as those cases involved enhanced, consecutive sentences, not the advisory, consecutive sentenced imposed on Faith. Our supreme court revised Faith's sentence to two consecutive, advisory terms, for an aggregate sentence of sixty years.

[22] In light of *Faith*, we find Scruggs's proposed twenty-five year aggregate sentence for his offenses to be wholly inadequate, given his position of trust over T.S. and the countless acts of molestation he inflicted upon her. As did our supreme court in *Faith*, we reject Scruggs's reliance on *Harris* and *Monroe*, as this case involves less than advisory, consecutive sentences and not the enhanced, consecutive sentences at issue in those cases. We also reject his argument that the fact that he did not use excessive force on T.S. militates for a revised sentence. T.S. testified that Scruggs picked her up and took her against her will to the laundry room to subject her to sexual intercourse on at least one occasion, which was a use of force against her. In addition, long-term child molesting such as that involved in this case rarely involves use by the perpetrator of excessive physical force or infliction of physical injury, as that type of conduct leads to discovery of the abuse. Although the absence of excessive physical force or physical injury is certainly not an aggravating circumstance, neither does it always support sentence revision, as it is essentially a circumstance that helps perpetuate the molestation. In short, Scruggs has failed his burden to convince us that the nature of his offenses renders his sentence inappropriate. *See Robinson*, 91 N.E.3d at 577.

### B. *Character of the Offender*

[23] Scruggs also urges us to revise his sentence in light of his character. Upon reviewing a sentence for inappropriateness, we look to a defendant's life and conduct as illustrative of his character. *Morris v. State*, 114 N.E.3d 531, 539 (Ind. Ct. App. 2018), *trans. denied*. Scruggs argues that his lack of criminal record, his efforts at employment, and his intellectual disabilities and mental health merit concurrent sentences.

[24] As to his lack of criminal record, his intellectual disabilities, and his mental health, we note that the trial court already took those factors into account when it imposed less-than-advisory individual sentences. We also observe that, despite his mental state, two court-appointed physicians concluded that Scruggs had the capacity to appreciate the wrongfulness of molesting T.S., yet he did it anyway, even after being caught in the act by Rinker. Although Scruggs's efforts at employment reflect positively upon him, we find nothing about his part-time, sporadic employment that overrides the long-term nature of the molestation at issue here and what that reflects about his character.

# CONCLUSION

[25] Based on the foregoing, we conclude that the trial court did not abuse its discretion when it imposed consecutive sentences and Scruggs's sentence is not inappropriate in light of the nature of his offenses and his character.

[26] Affirmed.

Mathias, J. and Tavitas, J. concur